ALFRED WHITNEY versus THE ATLANTIC AND ST. LAWRENCE RAILROAD COMPANY.

By the eleventh section of their charter, the Atlantic and St. Lawrence Railroad Company are obliged to erect and maintain substantial, legal and sufficient fences on each side of the land taken by them for their railroad, where the same passes through enclosed and improved lands; and in default of which they are liable for injuries occasioned thereby.

By the lease and assignment of the Atlantic and St. Lawrence Railroad, that company have not relieved themselves from any liability for losses or injuries to which they were subjected by their charter and the laws of the state.

This is an ACTION ON THE CASE, to recover the value of a horse which the plaintiff alleges was killed by a locomotive of the defendants, in consequence of their neglect in keeping the fence in repair along the line of their road adjoining the plaintiff's improved land, where his horse was rightfully put by the plaintiff, and comes forward on EXCEPTIONS to the ruling of GOODENOW, J.

The location of the railroad in question, and the plaintiff's title to the premises described in his declaration, are not disputed. The plaintiff's farm where the railroad crosses it is improved land, and enclosed. The plaintiff's horse was killed at the time mentioned by an engine and train running upon the railroad in the ordinary and usual manner. The horse was lawfully in the plaintiff's field adjacent to the railroad, and escaped on to the railroad through the gate at the plaintiff's crossing, or through the fence. On each side of the railroad, as located, there were fences constructed by the defendants originally. At the plaintiff's crossing, near his buildings, were gates forming a part of the lines of the fences. These gates were made, and hung, and fitted by the defendants, when they constructed the fences for the convenience and accommodation of the crossing. There were no cattle guards to the crossing.

There was evidence tending to show that the fence by the plaintiff's field where his horse was kept, was defective by reason of a broken rail, adjoining the railroad, and that the defect had existed during three months prior to and at the time of the injury alleged, and that the fastening of the gate referred to was insufficient, and must have been so for a considerable time. There was also evidence of ordinary care on the part of the plaintiff.

It was admitted that the defendants leased their railroad in question to the Grand Trunk Railway Company, under the authority of the act of the legislature, of March 29, 1853, on August 5, 1853, and that the lessees immediately took possession and control, and management of the railroad and all the engines, cars, and equipments, depots and property

leased, and have ever since exclusively maintained and operated the railroad, with the engines, cars, and equipments by their officers, servants, agents, &c.

The defendants have kept up their organization, having a president and board of directors.

The defendants contend that while the railroad and property aforesaid, was under lease and in the possession and under the control and management of the Grand Trunk Railway Company as aforesaid, this action could not be maintained against them, the defendants, for killing the horse in the manner aforesaid.

But the presiding justice ruled otherwise, and instructed the jury that this action could be maintained against the defendants, notwithstanding the lease aforesaid, and although the lessees at the time of the killing were in possession of, and operating the railroad in the manner aforesaid.

The jury returned a verdict for the plaintiff.

*Howard & Strout,* counsel for the defendants.

The plaintiff must recover, if at all, for the nonfeasance of the defendants. He can only recover against the party guilty of negligence.

The case finds, that the Grand Trunk Railway Company were in possession of the defendants' railroad, and had exclusive management of the same. To the world they were the owners. For their negligence no one else was accountable.

The legislature, by act approved March 29, 1853, s. 1, authorized the defendants to lease their road in such a manner " as will enable the lessees thereof to maintain and operate" the same. August 5, 1853, a lease was made to trustees for the Grand Trunk Railway Company, of the entire property of said road, road bed, &c. This was made subject to the laws of this state. It was accepted upon the terms, that the lessees were to maintain and operate the same, in pursuance of all the general and special laws of the state. They

were to defend all suits. The trustees assigned the same lease to the Grand Trunk Railway Company, February 9, 1855, reciting that they had been in possession, operated, and maintained the road since the original lease.

Laws of 1842, ch. 9, s. 6, requires the railroad corporation to erect and maintain fences. It was the duty of the lessees to maintain the fences as provided by law. The law gave power to the defendants to lease as they have done. The neglect to repair fences, which lies at the foundation of the plaintiff's case, was the neglect of the Grand Trunk Railway Company, and not of the defendants.

The relation of master and servant did not exist.

The statute authorizing the lease, involved also, when the lease was executed, a transfer of the duties of the defendants to the Grand Trunk Railway Company, and the liability for the neglect followed the transfer of the obligation. If the obligations were transferred, then the lessors cannot be liable for the neglect of the lessees.

But in act of March 29, 1853, s. 1, it is also provided, that nothing in the act "shall exonerate said company" (the defendants) from any duties or liabilities now imposed upon them by the charter or the laws, and we submit that this language cannot make the defendants responsible for the nonfeasance or misfeasance of the parties who have the legal right to the possession and control of the railroad, and are bound by law to maintain fences.

This provision was evidently designed to afford protection for existing liabilities of the Atlantic and St. Lawrence Railroad Company. It could not be intended to make the defendants liable for nonfeasances and misfeasances of the lessees, over whom the defendants had no control.

No notice to the defendants of the defect in the fence was proved. Notice to the Grand Trunk Railway Company is not notice to the defendants.

For these reasons we deem the instructions of the judge erroneous.

*Fessenden & Butler*, counsel for the plaintiff.

The "proximate cause" of the injury to the plaintiff's property, in this case, and the gravamen of the action as declared in the writ, was the neglect of the defendants to maintain a sufficient and legal fence on the side of their road where the same passed through the enclosed and improved lands of the plaintiff. This obligation was laid upon them by their charter and by the statute laws of the state, and they are not to be released therefrom by a lease of their road to other parties. The act authorizing a lease of the defendants' road to the Grand Trunk Railway Company expressly provides that they shall not thereby be exonerated from any liabilities imposed on them by their charter or by the general laws of the state. Charter of Atlantic and St. Lawrence Railroad Company, special laws of 1845; special laws of 1853, ch. 150, s. 1; laws of 1842, ch. 9, s. 6; *Norris* v. *Androscoggin Railroad Company*, 39 Maine R., 273.

CUTTING, J.  The eleventh section of the defendants' charter provides, that "said railroad corporation shall erect and maintain substantial, legal and sufficient fences on each side of the land taken by them for their railroad, where the same passes through enclosed and improved lands."

We refer to the decision of this court in *Norris* v. *Androscoggin Railroad Company*, 39 Maine R., 273, as decisive of the plaintiff's right to recover, unless the defendants' liability had been transferred to, and assumed by another corporation, before the cause of action had accrued.  And in defence it is so contended, and to show that such was the fact, "the lease to trustees for the Grand Trunk Railway Company," of August 5th, 1853, and the "assignment to the Company" of February 9th, 1855, have been introduced.  And, indeed, those instruments seem to have transferred, as contended, to the Grand Trunk Railway Company, upon certain terms, conditions, restrictions and limitations, the exclusive use and possession of the defendants' road and everything appertain-

ing thereto, for and during the term of nine hundred and ninety-nine years; and the case finds that at the time the plaintiff sustained his injury the road was so possessed and occupied.

But the defendants are a corporation subject to the laws of this state, and within the jurisdiction of her legal tribunals. Its responsibilities both as a corporation, and its stockholders, are well defined by the provisions of its charter, and the public laws of the state, by which provision is made for recovery of claims, and for redress of private wrongs; first by resort to, and a judgment and execution against the corporation, and subsequently, in a certain event, against the stockholders themselves.

Now, under such circumstances the defendants could not expect to relieve themselves of their numerous liabilities, as bailers or common carriers of merchandise, from the use of extraordinary care in the safety of passengers, and care and caution in preventing their engines from communicating fire to the forest, and to the habitations of residents along the line, and the destruction of life in various ways, by merely transferring such responsibilities to a foreign corporation, who are beyond the process of the courts of the state and of the union, unless *perchance*, it might be the possessor and owner of property within the jurisdiction.

The stockholders of the defendant company could never have conceived such an idea. If so, it was not for a moment entertained by the legislature, who, on application, permitted the transfer, but not without due regard to the responsibilities of the defendants and the rights and remedies of the citizen, for they declare that "nothing contained in this act or in any lease or contract that may be entered into under the authority of the same, shall exonerate the said company or the stockholders thereof, from any duties or liabilities imposed upon them by the charter of said company or by the general laws of the state.

According to the case of *Norris* v. *the Androscoggin Railroad Company*, before cited, the defendants had assumed the

duty of fencing the road, and were liable for the conse-
quences of any future neglect.  And they must have so
understood it.  They plainly refer to, anticipate and provide
for such contingencies in their lease, under the *seventh* class
of covenants and obligations.

<div align="right">

*Exceptions overruled,*
*and judgment on the verdict.*