A. BACKUS, JR., & SONS (A CORPORATION) v. THE DETROIT WESTERN TRANSIT & JUNCTION RAILWAY COMPANY AND THE DETROIT UNION RAILROAD DEPOT & STATION COMPANY.

*Railroad companies—Operation of road by lessee—Liability for damages.*

1. The operation of a railroad by a lessee does not change the relations of the original company to the public.
2. Where the use of a railroad right of way is restricted to certain purposes, its more general use, resulting in damage to the grantor, is actionable.
3. Upon the facts stated in the opinion, the defendants are held to be jointly liable for the unlawful use by the Wabash Company of the right of way acquired of the plaintiff; and, as an examination of the opinion is essential to a correct understanding of the case, reference is had thereto.

Error to Wayne. (Brevoort, J.) Argued June 15, 1888. Decided October 19, 1888.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*F. A. Baker (E. G. Stevenson,* of counsel), for appellant, contended:

1. The Union Depot Co. and the Western Transit Co. are liable in this action, because the Wabash, St. Louis & Pacific Ry. Co. is their agent in the operation of the Transit Co. road, and in the performance of the legal duty of the Transit Co. to so use this right of way as not to violate the rights of Mr. Backus, and those holding under him; citing *Nelson v. Railroad Co.,* 26 Vt. 717; *Railroad Co. v. Dunbar,* 20 Ill. 623; *Railroad Co. v. Brown,* 17 Wall. 445; *Abbott v. Railroad Co.,* 80 N. Y. 27; *Railroad Co. v. Mayes,* 49 Ga. 355.

2. Where a railroad company is required to fence its road, and in default is made liable for injuries resulting from such neglect, a lease of the road will not relieve the company from liability; citing *Whitney v. Railroad Co.*, 44 Me. 362; and the same rule prevails as to statutory liability for fires communicated by engines; citing *Stearns v. Railroad Co.*, 46 Id. 95; nor will legislative authority to make the lease of itself release the lessor;. citing *Singleton v. Railroad Co.*, 70 Ga. 464; *Balsley v. Railroad Co.*, 119, Ill. 68; *Railroad Co. v. Morris*, 68 Tex. 49; and see, also, *Lakin v. Railroad Co.*, 13 Or. 436; *Freeman v. Railway Co.*, 28 Minn. 443; *Railway Co. v. Curl*, 28 Kan. 622; *Railroad Co. v. Hambleton*, 14 Amer. & Eng. R. Cas. 126; *Railroad Co. v. Black*, 79 Ill. 262.

3. The Union Depot Co. is liable in this action, because it so constructed its yard that it cannot be used by the Wabash Co., or any other tenant, without violating the rights of Mr. Backus, and those claiming under him; citing *Fish v. Dodge*, 4 Denio,. 311; *Todd v. Flight*, 9 C. B. (N. S.) 377 (note 390); *Shipley v.. Associates*, 101 Mass. 251; *Owings v. Jones*, 9 Md. 108; *Jackman v. Arlington Mills*, 137 Mass. 277; *House v. Metcalf*, 27 Conn. 631.

*Charles M. Swift* (*Otto Kirchner*, of counsel), for defendants, contended:

1. The defendants are not liable jointly or severally for the acts of the Wabash Co. in using the Transit Co.'s road, such acts. being in no sense the acts of the defendants, nor do they become such because the Wabash Co. is the lessee of the Depot. Co., which in turn is the lessee of the Transit Co.

2. The rule that makes the lessor company answerable for the acts of its lessee is based upon the theory that the lessor company owes certain duties to the public in the running and. operation of its railway, and that it cannot absolve itself from responsibility by delegating its functions to another; citing *Railroad Co. v. Brown*, 17 Wall. 450; *McMillan v. Railroad Co.*, 18 Mich. 102; Redf. R. R. 616, chap. 22, § 1.

3. The Wabash Co., in using said track, whether in the running of its trains, or in switching or making up trains, was not discharging any duties that devolved upon either of the defendants, but exercised its own franchises, and discharged the duties that devolved upon it.

4. In furnishing to the Wabash Co. the necessary right of way and track, the Depot Co. lawfully exercised its principal function as. a corporation; citing How. Stat. § 3458; and it had no option in the matter, being bound under its charter so to do; citing How..

Stat. § 3485; and what it did, therefore, it did in obedience to law, and it delegated to the Wabash Co. no franchise that it was itself required to exercise.

5. The Transit Co. was authorized to lease its road to the Depot Co. (How. Stat. § 3490, as amended by Act No. 14, Laws of 1882), and the road thus acquired might be used by the lessee in the exercise of the franchises of the lessor, or of its own franchise, "to do a local and suburban passenger business" (How. Stat. § 3487), or "to make suitable and proper connections with all railroads terminating in or passing through" the city of Detroit "that might desire access to its depot" (How. Stat. §§ 3458, 3485), in the exercise of which last-named franchise the leased road was used by the Depot Co., and by the Wabash Co. in the exercise of its *own* franchise.

SHERWOOD, C. J.    The plaintiff brought an action on the case against the above-named defendants, and also against the Wabash, St. Louis & Pacific Railway Company, to recover damages for the unlawful and wrongful use of the plaintiff's land in the city of Detroit (over a part of which the defendants, for certain purposes, had a right of way for their engines and cars to pass over, and for no other purpose), and by which wrongful use the plaintiff claims to have been damaged in the use of its premises, and in the enjoyment of the same, to its great injury.

Plaintiff also claims in its declaration that by defendants' wrongful use of its premises and said right of way it was obliged to hire persons to protect its property, which consisted of a factory and large accumulations of lumber and material, from fire proceeding from engines wrongfully used on such right of way, in switching and making up trains thereon, greatly to its damage.

Also, by such wrongful use of such premises, a large quantity of lumber standing on plaintiff's property was covered, and the fibers thereof filled, with soot and cinders escaping from the engines, and scattered through the piles, which became saturated with coal dust, and was

greatly injured thereby for the purposes for which it was used; and by reason of the unlawful use of said right of way, and the danger caused thereby from fire, the plaintiff's rates of insurance have been greatly increased, and its rented premises adjoining have been greatly injured by said unlawful use, consisting as it does of a wharf and lumber-yard. And plaintiff claims as its damage for its said several injuries the sum of $100,000 in its declaration. To the plaintiff's declaration the defendants pleaded the general issue.

The plaintiff discontinued on the trial as to the Wabash road.

The case was tried in the Wayne circuit court before Judge Brevoort, by jury. At the close of the trial the circuit judge directed the jury to render a verdict for the defendants, and plaintiff brings error.

But two errors are assigned:

"1. The court erred in refusing to receive evidence tending to show the nature and extent of the damages suffered by plaintiff at the hands of the defendants.

"2. The court erred in directing the jury to render a verdict for the defendants."

There can be no doubt but that the plaintiff's declaration states a cause of action, which, if proved, would entitle it to recover damages. If there is any proof legally in the case tending to show the facts set out in the declaration there must be a reversal; and beyond this there is no other question before us for consideration, except, perhaps, it may be whether or not legal proof was offered, and rejected by the court, to prove such facts.

The defendant the Detroit Union Railroad Depot & Station Company was organized June 10, 1881. It acquired the land lying between Woodbridge street west, in Detroit, and the Detroit river, and extending from the grounds of the Michigan Central Railroad, at Twelfth street, to the

east line of the property of the plaintiff. The original and amended articles of association express the intention of the corporation to construct railroad tracks from the station grounds, so acquired, to the junction of the Wabash, St. Louis & Pacific Railway with the Lake Shore & Michigan Southern Railway, in the township of Springwells, and to there connect with the Wabash, St. Louis & Pacific road.

On October 20, 1881, the Detroit Union Railroad Depot & Station Company entered into a contract with the Wabash, St. Louis & Pacific Railway Company of the second part, whereby the Union Depot Company agreed to furnish the Wabash road with terminal facilities on said station grounds, the exact nature of which, and of the accommodations and facilities, it is unnecessary here to state. The instrument is called by the maker a "lease" or "demise." In substance, however, it is a contract by which the grounds, buildings, and tracks are to be used in common by both corporations, and such other roads as might thereafter see fit to join them, intending a union depot in the future, evidently.

Some of the provisions of this contract are that the tracks constituting the railroad yard on said grounds should be constructed by the Union Depot Co., for the Wabash road, and on such a plan and in such a manner as would be satisfactory to it. A map is referred to in the contract, and annexed to it, showing the general plan of the tracks or yard that had been agreed upon, and to which express reference is frequently made. Thus: The passenger-house and the tracks leading thereto are mentioned as follows:

"Also the right to use jointly with other railroad companies the proposed passenger-house to be built upon the grounds of said first party, and the tracks leading thereto, or, rather, two southerly tracks leading thereto, as indi-

cated on the map attached hereto, and including a strip of land," etc.

A reservation is made of a strip 400 feet by 100 feet for an elevator "about as indicated on said map." A reservation is also made of—

"A space for a double track to and from said elevator, about as indicated on said map."

And said first party agrees—

"To obtain the right of way from the westerly boundary of said station grounds, wide enough for four tracks, in as direct a line as is practically consistent with economy, to or near the point where the right of way of the party of the second part from the west approaches and touches and becomes parallel with the right of way of the railroad owned by the Lake Shore & Michigan Southern Railroad Company in fee simple ownership, and lease the same to the said second party, subject to the reservations. herein made.

"And the said first party agrees to build upon such right of way a railway track or tracks from the point of junction with the railroad of said second party, at or near said points where said rights of way come together, single or double, as the said second party shall desire, to said station grounds," etc.

The rent shall be the interest at 7 per cent. on the cost of the grounds, right of way, and the improvements, or a *pro rata* part thereof, as particularly described, and the lease shall be a perpetual one. The rights of occupancy to be enjoyed by the Wabash shall be that of an owner. This intention is expressed as follows:

"And the said parties agree that when the property is ready for use, and the improvements, tracks, station-houses, and other necessary buildings and erections are once complete, then and thereafter the said second party shall have the full and complete use of the same, and shall as absolutely control and manage the same as if the owner thereof," etc.

The defendant the Detroit Western Transit & Junction

Railway Company was organized May 2, 1881. On March 17, 1882, the location was fixed as follows:

"Beginning at such point as shall be found most admirable on the east line of water lot number ten, on the Thompson farm, so called, and between Woodbridge street and the Detroit river, in the city of Detroit, Wayne county, Mich., and running thence in a direction southerly and westerly on such line as shall be found most convenient and practicable to and into the town of Springwells, in said county, until said line shall intersect the railroad of the Wabash, St. Louis & Pacific Railroad Company, at some convenient point near its crossing of the Dearborn road, so called, and between said crossing and the river Rouge in said town of Springwells; all of said railway of this company being in said county of Wayne, and the entire length thereof being about four miles, as is estimated."

On April 12, 1882, the Detroit Western Transit & Junction Railway Company, as the party of the first part, entered into a contract with the Detroit Union Railroad Depot & Station Company, as the party of the second part, by which the Union Depot Company agreed to furnish and advance to the Western Transit all the money necessary to acquire its right of way and to construct its railroad, and in consideration thereof the Western Transit leased the whole thing to the Union Depot Company forever, at an annual rental equal to the money so furnished and advanced.

The Western Transit agreed to keep up its organization and preserve its franchises, and use them for the condemnation of a right of way. It also agreed if desired to issue its capital stock to the Union Depot Company to the amount of said debt, so that the Union Depot Company should—

"Just become the holder of its stock, and also through it the absolute owner of the property represented by it, and from that time to manage it as such owner."

In addition to furnishing and advancing all the money needed, the Union Depot Company agreed as follows:

"And the said second party agrees to provide for the working and management of the said railroad and branches, and to maintain the same and all necessary structures and fences thereon, and to assume all the responsibilities of such management, and to indemnify and save harmless the said first party from and against all and every kind of liability which may arise or grow out of the management and operation of said road and branches."

With these contracts and agreements referred to existing between these parties defendant, the Detroit Western Transit & Junction Railway Company, in July, 1882, took proceedings to condemn and acquire the right of way across the land known as the "Backus Property," lying immediately west of the Union depot grounds. This property has a frontage of about 400 feet on the Detroit river, and extends from the river to Woodbridge street.

The petition described a piece of land across the property 60 feet wide, as the parcel sought to be acquired as a right of way, and it contains the following clause:

"The right of way hereby sought is sought and to be used only for the passage of trains, and not for the switching and making up of trains."

The strip was condemned under this petition. There was a slight change made from the line condemned, agreed upon by the parties, and the parties conveyed to the company the land by deed containing the following clause:

"The right of way hereby conveyed is to be used only for the passage of trains, and not for the switching or making up of trains, and is to be subject to the right of the owner, A. Backus, Jr., and those claiming under him, to have convenient crossings over said railroad provided and maintained by said railroad company."

The Union Depot Company immediately went on and constructed its railroad until it connected with the Wabash

road, as agreed upon, and the evidence tends to show it carried out its agreement with the Western Transit Company, and when the road was done and the depot completed it commenced to operate the road. The Wabash took it immediately as soon as it was ready, and has done switching and making up trains on the Backus grounds ever since.

At appears that the firm of A. Backus, Jr., & Sons occupied the Backus property prior to the condemnation proceedings, and held a lease of the same. This firm, July 31, 1885, was organized as a corporation, and on August 1, of that year the firm assigned all of its assets and claims to the plaintiff.

There can be no question, we think, under the foregoing facts, of the plaintiff's right to bring suit if it has a cause of action, or if the firm had a cause of action, against the defendants. There was testimony showing or tending to prove all the foregoing facts stated. It also appeared that the plaintiff had objected to and remonstrated with the defendants against the illegal use claimed to have been made of the right of way over the Backus ground, but without avail. As early as May 14, 1885, the plaintiff's assignor called attention to this subject in the following letter:

"MAY 14, 1885.

"HON JAMES F. JOY,
        "Prest. Transit Co.

"*Dear Sir:* My attention has been called repeatedly to the violation of A. Backus, Jr., & Sons' rights by the constant switching and making up of trains across their yard and Eighteen and one-half street, and your attention has been called to the subject repeatedly, with the request that the obstructions might be removed. My deed for right of way for through trains is ample to cover your rights, and will be respected, but this switching of cars across above premises must come to a stop, or I shall insist on knowing why, and shall take steps to protect my rights.

"Your immediate attention to above complaint will save much trouble.                    Yours respectfully,
                              "A. BACKUS, JR."

It appears from the testimony that Mr. Joy, who was president of the Union Depot Company, and the firm of A. Backus, Jr., & Sons, understood the rights secured in the Backus property, and the use to be made of it, alike, and that switching cars and making up trains of cars were not to be done there; and it further appears that when the lease was given to the Wabash road Mr. Joy informed that road of the manner in which it could do business over the Backus grounds; that the agreement with Mr. Backus was that no switching should be done upon these grounds or making up trains, and Mr. Joy says: "I felt that we never acquired the right of way for it."

I do not think it would be questioned, had the Depot Company used its tracks in the manner the testimony tends to show they were used by its lessee, but that it would be liable to the plaintiff or its assignor. At least I do not think it could be contended otherwise.

The Depot Company could not so lease or transfer its interest under its franchises as to rid itself of its liability to the plaintiff for the improper use of them, and when the Transit Company made its arrangement with the Depot Company it seemed to understand this, and had inserted in the agreement a clause making the latter assume all the responsibility of the management of its property, and to save the Transit Company harmless against all liability arising out of such management and the operation of its road.

The agreement between the two companies was such, however, as to have the effect of consolidation as to the liability to third parties for the unlawful use of their property in the operation of their road, for damages consequent thereon, and they were liable also for such dam-

:age as was done to third parties by the unlawful use of the right of way allowed by them, done by lessees or ·other persons. Otherwise all responsibility for such damage could be avoided, when an enterprise of doubtful success was about to be undertaken, by a simple transfer of the use of the property to parties who were insolvent until the result of the enterprise could be determined. The law did not intend this, and it should not receive such a construction or application.

I think in these views we are sustained, not only by reason, but by authorities, so far as we have any. *Nelson v. Railroad Co.*, 26 Vt. 717; *Railroad Co. v. Dunbar*, 20 Ill. 623; *Railroad Co. v. Brown*, 17 Wall. 445.

In this case it is said: "The operation of the road by the lessees does not change the relations of the original company to the public." *Abbott v. Railroad Co.*, 80 N. Y. 27; *Railroad Co. v. Mayes*, 49 Ga. 355; *Whitney v. Railroad Co.*, 44 Me. 362; *Stearns v. Railroad Co.*, 46 Id. 95; *Singleton v. Railroad Co.*, 70 Ga. 464; *Railroad Co. v. Morris*, 68 Tex. 49 (3 S. W. Rep. 457); *Lakin v. Railroad Co.*, 13 Or. 436 (11 Pac. Rep. 68); *Freeman v. Railway Co.*, 28 Minn. 443 (10 N. W. Rep. 594); *Railway Co. v. Curl*, 28 Kan. 622; *Railroad Co. v. Hambleton*, 14 Amer. & Eng. R. Cas. 126; 1 Redf. R. R. 588, chapter 22, § 1; *McMillan v. Railroad Co.*, 16 Mich. 102.

The plaintiff has shown by its proofs the unlawful use of its property by the defendants, and when it undertook to show its damages the court refused to allow it to do so, and directed the verdict and judgment for the defendants.

In this he erred, and the judgment must be set aside, and a new trial ordered.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. LONG, J., did not sit.