[No. 17840.  Department One.  September 11, 1923.]

HADLEY WAREHOUSE COMPANY, *Respondent*, v. FAY A.
BROUGHTON *et al., Appellants.*[1]

TROVER AND CONVERSION (5)—PURCHASE OF PROPERTY FROM ONE
OTHER THAN OWNER. The purchaser of wheat from one who was
not the owner and had no right or authority to sell it is liable for
a conversion.

SAME (6)—WAREHOUSEMEN (6)—ACTIONS—TITLE AND RIGHT TO
POSSESSION OF PLAINTIFF. An employee in a public warehouse au-
thorized to receive wheat, issue weight receipts and ship out when
ordered to do so, is not held out as having apparent authority to
sell the wheat.

WAREHOUSEMEN (4)—LOSS OF GOODS—RIGHT TO RECOVER. Where
wheat is stolen from a public warehouse, the warehouse company
may recover the wheat, although it was not the owner, since it had
liens thereon, and was in the actual possession.

Appeal from a judgment of the superior court for
Walla Walla county, Mills, J., entered November 28,
1922, upon the verdict of a jury rendered in favor of
the plaintiff, in an action for conversion. Affirmed.

*Herbert C. Bryson* and *John W. Brooks,* for appel-
lants.

*Evans & Watson,* for respondent.

MITCHELL, J.—This action was brought by the Had-
ley Warehouse Company, a corporation, against
Fay A. Broughton and the partnership of Bierwagen &
Jenks, to recover the market value of five hundred
and twenty-five sacks of wheat, stolen by Broughton
and sold and delivered by him to Bierwagen and Jenks,
who in turn sold and delivered it to an outside party.
The pleadings consist of the complaint and an answer
containing general denials. From a verdict and judg-

[1]Reported in 218 Pac. 257.

ment for the plaintiff, Bierwagen and Jenks have appealed.

The conversion of the wheat occurred in November, 1921. The appellants were merchants and grain dealers in the city of Walla Walla. The respondent was conducting, and for several years had conducted, a licensed public warehouse, some ten miles from the city of Walla Walla. It had never engaged in buying and selling wheat. It had no wheat of its own. Its uniform practice or course of business was to store sacked grain for its customers, each one's grain being stored in a separate place in the warehouse; upon receiving grain, the warehouse company issued its weight receipt, which was taken by the grower to the Farmers Agency in the city of Walla Walla, which took up the weight receipt and issued to the grower the statutory warehouse receipt, in triplicate—one for the grower, one for the warehouse company, and one to be kept by the Farmers Agency. Upon a sale of wheat, the grower endorsed and delivered the warehouse receipt to the purchaser, who in turn delivered it to the Farmers Agency, which, upon being paid warehouse and handling charges, issued a written order to the warehouse to load and ship the wheat according to the directions of the purchaser. No person gave warehouse receipts or orders to load and ship other than the Farmers Agency.

Broughton was employed at the warehouse to receive the wheat and issue weight receipts therefor, and to load and ship out the wheat as directed by order of the Farmers Agency. He rendered no other service and had no other authority. He was not a wheat grower, nor a wheat dealer. Without any right, order, or authority whatever, he took a carload of the wheat from the warehouse and shipped it to the appellants'

private warehouse in Walla Walla, and thereafter, within a short time, he delivered twenty-five other sacks of wheat to the appellants by several automobile trips. Broughton had arranged the matter with the appellants at their place of business prior to the delivery of any of the grain, for a price considerably below the market price, to be paid $50 upon delivery and the balance thereafter somewhat indefinitely.

The general rule is stated in *Klundt v. Bachtold*, 110 Wash. 594, 188 Pac. 924, quoting from the case of *Tuttle v. Campbell*, 74 Mich. 652, 42 N. W. 384, 16 Am. St. 652, to be as follows:

"The principle is well settled that a seller of personal property can convey no greater title than he has, and it makes no difference that the purchaser has no notice and is ignorant of the existence of other parties in interest."

And, also, Cooley on Torts (2d ed.), page 528, as follows:

"One who buys property must, at his peril, ascertain the ownership, and if he buys of one who has no authority to sell, his taking possession, in denial of the owner's right, is a conversion."

But counsel for appellants invoke the doctrine of apparent authority, because of the fact that Broughton was allowed to remain at the warehouse, to receive wheat and ship it out, although his duties were confined within prescribed limits. There was no apparent authority in Broughton. 21 R. C. L., p. 854, Principal and Agent, § 34, speaking of apparent authority says it is ". . . that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds himself out as possessing;" and again, in the same section: "Apparent authority may be and often is derived from a course of dealing,

or from a number of acts assented to or not disavowed."

Certainly there is nothing of that kind in this case. This was a public warehouse which conducted its business in a regular well understood way, inconsistent with the idea that Broughton had any power or authority whatever other than performing the menial service of receiving wheat, issuing weight receipts therefor, and then shipping the wheat out when ordered to do so by the Farmers Agency; nor is there any evidence or suggestion that the warehouse company or the Farmers Agency, that had charge of all the business, ever held Broughton out as having power to sell, or permitted him to sell wheat, or that they ever knew of his selling or attempting to sell any. And still further, that one of the appellants who dealt with Broughton testified that, upon receiving the wheat, he knew from the bill of lading of the car load that it came from the Hadley warehouse, and that as a fact he did not know that Broughton was in any way connected with that warehouse, which of itself is enough to answer the contention of the appellants as to the apparent authority of Broughton.

The wheat stolen belonged to and was placed in the warehouse by the Fix-McMillan Company, and it is contended by the appellants that, therefore, the respondent warehouse company was not entitled to recovery, it not being the owner. The law is to the contrary of that contention. The warehouse had a lien on the wheat for storage and handling charges and was in the actual possession of it at the time it was stolen by Broughton, and under the well settled law, may recover against a stranger damages commensurate with the full value of the property taken. 3 R. C. L., pp. 127, 129, §§ 49, 51; 26 R. C. L., p. 1131,

§ 41; 38 Cyc., p. 2050, id., pp. 2089-90; note to case of *Gunzburger v. Rosenthal*, 226 Pa. St. 300, 75 Atl. 418, 26 L. R. A. (N. S.) 840.

In our opinion, the case was fairly tried. Judgment affirmed.

MAIN, C. J., HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.