[No. 25621. Department One. July 18, 1935.]

FRYE & COMPANY, *Appellant*, v. ALBERT BOLTMAN, *Respondent*, CLIFFORD GRAY, *Defendant*.[1]

*Eggerman & Rosling*, for appellant.

*John C. Richards*, for respondent.

TOLMAN, J.—This is an action in replevin for the recovery of a team of horses. The case was tried to the court sitting without a jury, on an agreed statement of facts, resulting in a judgment of dismissal. The plaintiff has appealed from that judgment.

It appears that the appellant was the owner and in possession of the horses in question and had them

[1]Reported in 47 P. (2d) 839.

at its stockyards in Seattle for sale. On November 28, 1933, the defendant Clifford Gray (who was not served and did not appear in the action) appeared, examined the horses, and expressed a desire to buy at the price named to him. He then stated that his name was Roland Macmier; that he was a farmer of substantial means living near Snohomish; that he had an account in the First National Bank of Snohomish and desired to pay for the horses by giving a check on that bank to cover the purchase price.

The officer of appellant, to whom the statement was made, telephoned to the bank and ascertained that Roland Macmier had a credit therewith sufficient to cover the proposed check. Whereupon the officer acting for the appellant received and accepted from Gray a check on the bank mentioned, payable to the order of Frye & Company, for $395, the check being signed "Roland Macmier, Route No. 4, Snohomish." A memorandum of sale to Roland Macmier was executed, and the horses were delivered to Gray at Everett on the following morning.

The check was promptly deposited in a Seattle bank for collection and promptly forwarded. On December 1, 1933, word was received from the drawee bank that the signature on the check was forged. The appellant immediately instituted a search for the horses and for Gray, which, though seemingly thorough and efficient, did not result in the discovery of the horses until they had passed into the hands of an innocent purchaser for value, and so far as this record shows, Gray was never apprehended.

The trial court decided the case upon the theory of comparative innocence. Perhaps, if that theory were applicable, we should feel constrained to agree with the trial court, but as we see it, the issues here presented are governed and controlled by our statutes.

Rem. Rev. Stat., § 2129 [P. C. § 9131-59], enacted in 1854, provides:

"All property obtained by larceny, robbery, or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property; . . ."

As a part of the same act is another section which reads:

"Every person who shall falsely represent or personate another, and in such assumed character, shall receive any money or other property whatever intended to be delivered to the party so personated, with intent to convert the same to his own use, shall be deemed guilty of larceny, and shall, on conviction thereof, be imprisoned in the penitentiary not more than fourteen years nor less than one year, or imprisoned in the county jail for any length of time not exceeding one year." Laws of 1854, p. 84, § 53.

It is therefore apparent that the legislature of 1854, by one and the same act, defined the obtaining of money or property by falsely personating another as larceny and also provided that property obtained by larceny shall be restored to the owner notwithstanding the fact that it may have passed to an innocent purchaser.

This subject was considered by this court in the case of *Linn v. Reid*, 114 Wash. 609, 196 Pac. 13, where the act of 1854 was considered at some length and parts here pertinent were quoted. It was there squarely held that what the legislature intended to cover by the use of the word "larceny" must be determined from what the law then defined as larceny. Since by the act of 1854 what was here done was defined as larceny and since that act declared that property so obtained must be returned to the owner, notwithstanding a purchase in good faith by one not a

450

party to the wrongdoing, we see no escape from the conclusion that appellant is entitled to recover under the statute.

Of course, one so entitled to recover may, by acts amounting to an equitable estoppel, place himself in a position where he cannot enforce his legal title, but we see nothing in the facts of this case which even approaches equitable estoppel.

The judgment appealed from is reversed, with directions to enter judgment for the appellant awarding a return of the horses, or, in the event of non-return, for their reasonable value.

MAIN, BEALS, BLAKE, and GERAGHTY, JJ., concur.