Argued October 28; reversed and remanded February 17, 1948

# KELLEY *v.* NESS

189 P. (2d) 570

*S. H. Burleigh,* of La Grande, argued the cause for appellant. With him on the brief were Raley, Kilkenny and Raley, of Pendleton.

*William W. Wells,* of Pendleton, argued the cause for respondent. With him on the brief was Albert S. Cooley, of Pendleton.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY, HAY and WINSLOW, Justices.

ROSSMAN, C. J.

This is an appeal by the plaintiff from a judgment of the circuit court, based upon findings of fact and conclusions of law, which was entered in favor of the defendant. The nature of the action was Claim and Delivery; see §§ 7-401 to 7-412, both inclusive, and § 6-703, O. C. L. A. The personal property described in the complaint was a rock crusher and equipment incidental to its use. We shall hereafter refer to all of it as a rock crusher. The answer, in addition to denying the appellant's claim of ownership, alleged that April 23, 1945, the Reconstruction Finance Corporation, a Federal agency, represented to the respondent that it owned "all the machinery, junk and scrap iron" located upon some lots in Pendleton which it owned; that the R. F. C. invited the respondent to submit an offer for the personal property; that the rock crusher was a part of the personal property which the R. F. C. said it owned; that the respondent had no information that the appellant claimed ownership of the rock crusher; that the respondent, pursuant to the invitation of the R. F. C., submitted a bid for all of the personal property; that April 30, 1945, the R. F. C. accepted the respondent's bid and sold to him the personal property; that the respondent had no information that anyone except the R. F. C. owned any of the property which he purchased; that following his purchase the respondent assumed possession of all of the personal property including the rock crusher. The reply denied all averments of the answer which alleged that the respondent acquired title to the rock crusher.

The sole assignment of error is:

"Appellant assigns as error the failure of the trial judge to allow the appellant's motion for a judgment in his favor and against the respondent."

It is agreed that the R. F. C. sold the rock crusher and appurtenant equipment to the appellant for $1,185.00, which he paid. The rock crusher, which was a large heavy object, stood, until the respondent removed it, upon a parcel of realty in Pendleton known as the Harvey Meyers property, which at one time belonged to a concern entitled Meyers Concrete Products Company but which was owned by the R. F. C. when it sold the rock crusher to the appellant. Although the appellant removed some of the articles which he had purchased, he did not remove the rock crusher. It is agreed that April 24, 1945, the respondent purchased for the sum of $75.00 some personal property from the R. F. C. which at that time was upon the aforementioned real property. He claims that the articles which he purchased included the rock crusher. Thus, it is seen that both the appellant and the respondent made their purchases from the same vendor, the R. F. C. The sole question submitted by the appeal is whether or not the purchase made by the respondent about a year and a half after the appellant's, conferred title upon him to the rock crusher. That issue depends upon whether or not the rock crusher was in possession of the R. F. C. when the respondent made his purchase.

The record indicates that some time prior to 1943 the Meyers Concrete Products Company was engaged in the concrete business in Pendleton and owned the aforementioned real and personal property. The realty was improved with a dwelling house and two other structures. One of the buildings housed the rock crusher. The Meyers Company found it necessary to procure a mortgage loan from the R. F. C. Eventually the R. F. C. foreclosed the mortgage and became the owner of all the realty and personalty which the mortgagor had owned. After the R. F. C. had taken

title, the aforementioned dwelling house and structures became untenanted.

Included in the personal property which the R. F. C. acquired through the foreclosure was the aforementioned rock crusher. November 5, 1943, that agency, as we have seen, sold the rock crusher and its appurtenant equipment to the appellant.

About a year and a half after the R. F. C. sold the rock crusher to the appellant it sold the aforementioned real property to Jacob A. and Christine M. Kaufman. After March 21, 1945, the Kaufmans took possession of the realty and moved into the dwelling house. At that time the rock crusher remained upon the realty. No one claims that title to it passed to the Kaufmans.

When the Kaufmans moved upon the property there stood upon it not only the rock crusher which the appellant had purchased, but also a quantity of other personal property. The latter consisted of some used machinery and a large amount of other objects, such as old automobile bodies. The evidence frequently refers to all of this material as junk, thereby possibly implying that even the old machinery may have had no value except as old iron. The Kaufmans, upon moving upon the property, were anxious that it should be cleared of all of this material, and the R. F. C., believing that at least some of it was salable, wanted to find a purchaser who would purchase all of it. Shortly after the Kaufman's moved into the house the R. F. C. sent letters to several dealers which expressed its wishes and offered for sale the following:

"1 Old Rebuilt Cement Mixing Machine—No manufacturer's name or identification.

1 Old Rebuilt Cement Pipe Tamping Machine— No manufacturer's name or identification.

1 Lot of Iron concrete pipe forms, cores, rings and pellets and 2 home-made pipe carrying carts, including all scrap iron and steel.

1 Water pump of undetermined make, size and condition; this pump is supposed to be in the well. The well is covered, probably with a heavy wooden cover about three feet underground."

One of these letters came into the possession of a real estate agent by the name of Grover Pound, who was a member of a firm entitled G. F. Hodges Agency. After Mr. Pound received the letter he showed the property to the respondent, and secured from him an offer to pay $75.00 for it and to cart away the valueless articles. Mr. Pound prepared and signed the following writing:

"April 23, 1945

G. F. Hodges Agency

243 S. Main St.

Pendleton, Oregon

Gentlemen:

Regarding the junk in the old Harvey Meyers property in the East end of Pendleton, which you wish to have me remove from the premises, I herewith propose to make you an offer of $75.00 for all machinery and scrap iron now located on said premises.

In making this offer I will agree to remove the junk from said premises as soon as possible, but not later than 90 days from the date hereof. In making this offer, I propose to take from the premises all the scattered machinery parts both sheet iron and cast iron, remove from the building the gravel screen, all machinery attached to said building, also agree to take away every piece and parcel of material, sheet iron, cast iron or otherwise, from said premises within the 90 day limit, but will not remove any lumber or timber from said build-

ing. This offer is also to include all of the metal junk in said building which is not attached thereto.

Ness Auto Wrecking
By M. H. Ness.

We, the undersigned, present owners of the above described property hereby accept the time limit as hereinabove set forth for the removal of said junk by the Ness Auto Wrecking Co.

Jacob A. Kaufman
Christine M. Kaufman.''

Next, Mr. Pound wrote a letter to the R. F. C. saying:

''For your information wish to advise that we have secured a cash offer for the junk on the above subject property of $75 from a Mr. Ness, who is in the wrecking business in Pendleton. Mr. Ness, like all the rest we have shown the junk to, said that the cost of dismantling the machinery and picking up all of the junk on the place would represent a considerable outlay of money and said that he was taking a chance as far as profit was concerned. He thought he might be able to sell a few of the separate parts and still have enough junk to sell to come out with a little profit.''

The letter mentioned the fact that the respondent asked for 90 days' time in which to remove the material, and broached the matter of a commission. It concluded as follows:

''In any event, we were surprised to get any kind of an offer for the junk, after showing it to so many and hearing their comment.''

The R. F. C. replied:

''This will acknowledge receipt of your letter dated April 20, 1945, wherein you mentioned that you have a prospective buyer for the 'scrap' located on subject property.''

The rest of the letter stated that the offer was accepted and that the commission ($25.00 which Mr. Pound had

suggested was satisfactory. Shortly Mr. Pound wrote to the R. F. C.:

"Enclosed herewith is our check in the amount of $50 representing payment in full by Mr. M. H. Ness of Ness Auto Wrecking, Pendleton, Oregon, for the junk of the above subject property."

It will be observed that the offer made by the respondent did not employ the term "rock crusher." The correspondence which passed between the R. F. C. and Mr. Pound after the latter's receipt of the offer nowhere uses the term "rock crusher."

Mr. Pound, after conceding that the personal property which he was authorized to sell was never pointed out to him, swore that he was empowered to sell "all the machinery, scrap on the grounds and in the building." According to his testimony, he deemed the rock crusher a part of the machinery and scrap. The record contains reason for disbelieving Mr. Pound, but we shall accept his statement as the truth. He swore that he had no knowledge of the appellant's interest in the rock crusher. The respondent testified that Mr. Pound told him that the R. F. C. owned all of the personal property shown to him, including the rock crusher, and that the sale to him included that object.

According to the uncontradicted evidence, the rock crusher was in good working order. The appellant swore that, in view of the difficulty of procuring such an object in the war period, the rock crusher's value was $1,500 when the respondent took it.

The uncontradicted evidence shows that after November 5, 1943, when the R. F. C. sold the rock crusher to the appellant, it had no intention of offering it for sale to anyone else. It conceded the appellant's

ownership and right to possession. The official of the R. F. C. who testified was questioned and answered as follows:

"Q. I will ask you if at the time of accepting this money, $75.00, from Mr. Ness, or when negotiations with the Hodges Agency for the sale of this property listed, if your company at that time claimed any title to the property previously sold to Mr. Kelley?

"A. No. We did not.

"Q. Did you claim any right to possession of that property at that time?

"A. No, sir. We did not."

No one questions the verity of that testimony or of the witness's authority to speak for his principal.

*Velsian v. Lewis,* 15 Or. 539, 16 P. 631, says:

"Nothing can be plainer that 'no one can sell a right when he himself has none to sell, and that every such wrongful sale, by whomsoever made, whether by thief or bailee, acts in derogation of the rights of the owner and in hostility to his authority, and consequently, can neither acquire themselves, nor confer on the purchaser, any right or title of such owner. Mere possession of another man's property affords no evidence that the person having such possession has power to sell it, and he who purchases or intermeddles with it must see to it that he is protected by the authority of one who has power to sell.' (Dixon v. Caldwell, 15 Ohio St. 412; Spraights v. Hawley, supra, 39 N.Y. 441; Cooper v. Newton, 45 N. H. 337.)"

That decision expresses the rule governing the transfer of the title to personalty, so far as the rule is unaffected by legislation.

Section 71-125, O. C. L. A., which is § 25 of the Uniform Sales Act, provides:

"Where a person having sold goods continues

in possession of the goods, or of negotiable documents of title to the goods, the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge, or other disposition thereof, to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same.''

■ It will be observed that that section of our laws, so far as it is applicable to the case before us, permits a non-owner to confer title only if he was a previous owner, and continued in possession of the goods until he sold them to the second buyer. Therefore, one who asserts that he acquired title from a non-owner must prove that his vendor was at one time owner and that he never parted with possession. A former owner can defeat the title of his first vendee and confer upon a later vendee that which he himself lacks (title) only by maintaining his possession. Section 71-125 makes the multiple vendor who maintains possession a statutory agent of the true owner to confer title upon the second vendee, provided the latter acted in good faith, paid value and had no notice of his vendor's lack of title.

We shall assume that the respondent paid value, acted in good faith and lacked notice of the true facts.

■ It will be recalled from what we have said that about a year and a half after the appellant paid the R. F. C. $1,185.00 for the rock crusher it sold the realty upon which that device stood to the Kaufmans. Two or three weeks before the respondent visited the premises and made his purchase, the Kaufmans moved into the house and took actual possession of the property upon which the rock crusher stood. From that point on the R. F. C. had no further interest in either the realty

or anything upon it except the unsold personal property which littered the land and which some of its letters deemed junk. It is clear that after the Kaufmans took possession of the land the R. F. C. was not in possession of the rock crusher.

After the Kaufmans took possession of the realty they became the bailees of the rock crusher and of the unsold personal property: 6 Am. Jur., Bailments, §§ 84 and 86. The bailor of the former was the appellant and that of the unsold property was the R. F. C.

We are satisfied that when the R. F. C. made the sale to the respondent that vendor did not have possession of the rock crusher. It had no rights whatever in that object.

The findings of fact entered by the circuit court, referring to the rock crusher, state:

"Possession thereof was retained by the RFC, and at no time was such possession of such personal properties delivered to the plaintiff, Cecil D. Kelley, but was retained by the RFC until delivered unto the defendant, M. H. Ness."

For the reasons above stated, we believe that the rock crusher was not in possession of the R. F. C. when the respondent made his purchase. It was in possession of the Kaufmans. We believe that the unchallenged and uncontradicted evidence is opposed to the finding.

We sustain the assignment of error, and believe that the appellant's motion for judgment should have been allowed. The cause is remanded to the circuit court for the purpose of having it determine the amount of the judgment.

Reversed and remanded.

WINSLOW, J., a member of this Court when the argument was heard, took no part in this decision.