Argued October 31, 1950, reversed January 4, 1951

# PLUMMER *v.* KINGSLEY
226 P. (2d) 297

*John F. Kilkenny,* of Pendleton, argued the cause for appellant. On the brief were Raley, Kilkenny & Raley, of Pendleton.

*W. E. Hanzen,* of Pendleton, argued the cause and filed a brief for respondent.

Before Lusk, Chief Justice, and Brand, Rossman, Hay and Warner, Justices.

BRAND, J.

The plaintiff Plummer brings this action in replevin against the defendant Kingsley for the recovery

of a certain automobile or its value. The answer asserts title in defendant based on estoppel. After issue joined, the case was tried by the court without a jury. The court made findings of fact and conclusions of law and entered judgment that the plaintiff recover possession of the automobile, or in case delivery could not be had, that he recover judgment in the sum of $600, the value of the property. The defendant appeals.

The complaint is in the usual form, alleging plaintiff's right to immediate possession; the unlawful withholding of possession by the defendant in Umatilla County; demand and refusal; and the value of the property. The answer alleges affirmatively that the plaintiff delivered to one Davis the possession of the automobile and possession of the indicia of ownership, to wit, the certificate of title issued by the state of Washington and that the defendant, as a bona fide purchaser for value without notice purchased the automobile and received delivery of the car and of the certificate of title and of a duly executed bill of sale. The plaintiff filed a reply alleging that the defendant had notice and knowledge of the rights of the plaintiff.

The evidence and the findings of fact, which the defendant admits are supported by the evidence, may be summarized as follows: On 12 May 1948, the plaintiff, in the state of Washington, purchased the automobile in question from one Sullivan, who, under that date, endorsed the Washington certificate of title and delivered it, together with the automobile, to the plaintiff. On 23 May 1948, the plaintiff, being the owner, and in possession of the automobile, agreed to sell it to one Davis for $800. Davis gave to the plaintiff a check in that amount and the plaintiff delivered to Davis the possession of the car and the certificate of

title in the same condition as it was when he received it from Sullivan. The plaintiff permitted Davis to drive the car away from plaintiff's premises. Davis had no account in the bank on which the check was drawn. The check was received on Sunday, May 23, and was dishonored on presentation the next morning. Davis was a criminal and his actions were with fraudulent intent. The court found that "it was the intention of the plaintiff at said time that said check was not accepted in payment of the said automobile and would not be viewed as payment until the said check had been honored and paid;" In fact, the plaintiff testified without contradiction, "I told him [Davis] there was no deal on the car until I deposited the check in the bank in the morning and received full payment in cash." On 25 May, Davis had in his possession in Pendleton, Oregon, the car, and the Washington certificate of title, endorsed, as before stated, by Sullivan, the predecessor in title of the plaintiff. At that time and place, Davis agreed to sell, and the defendant Kingsley, to buy, the automobile for $600. Davis delivered to the defendant the automobile, the certificate of title, and a duly executed bill of sale, and the defendant paid Davis $600. At that time "the defendant had no notice or knowledge of any kind, nature or description of any claim on the part of the plaintiff to said automobile."

In the findings of fact, so-called, the court included the following findings which are clearly conclusions of law: (1) "the title of the plaintiff to said automobile never passed to the said Wm. H. Davis"; (2) "That the plaintiff is entitled to the immediate possession" of the automobile in question; (3) "that the defendant at the beginning of this action and at the present time

is wrongfully and unlawfully withholding possession of the above described personal property from the plaintiff''. The defendant takes no exception to the findings, which were in truth, findings of fact, but objects to the conclusions of law incorporated in the findings.

The defendant assigns as error the action of the trial court: (1) In denying defendant's motion for judgment in his favor. (2) In denying the defendant's motion for judgment in his favor based on the findings. (3) In overruling the defendant's objections to finding No. VIII, the one in which the court found that the plaintiff was entitled to the immediate possession of the automobile.

If title to the car passed to Davis, then without doubt, he could convey good title to the defendant. So long as the car remained in the possession of Davis or of one in his shoes, the original owner would be entitled to rescind and recover title and possession. But, after sale to a bona fide purchaser, the latter, having both legal and equitable rights, would prevail. O. C. L. A., § 71-124. The transaction between the plaintiff and Davis occurred in the state of Washington and our first question therefore is whether, by the law of that state, Davis acquired title.

In support of his contention that the title to the automobile did not pass to Davis, the plaintiff cites *Quality Shingle Co. v. Old Oregon Lumber & Shingle Co.,* 110 Wash. 60, 187 P. 705. In that case the plaintiff, who was the owner of shingles, agreed with the Shepard Company for a cash sale. The Shepard Company gave an n. s. f. check as payment. It was held that title did not pass. In *Frye & Co. v. Boltman,* 182 Wash. 447, 47 P. (2d) 839, one Gray, impersonating

a rich farmer, purchased from the plaintiff a team of horses, giving a forged check in payment. The court held that the case was governed by statute. We quote:

" * * * Rem. Rev. Stat. § 2129, enacted in 1854, provides: 'All property obtained by larceny, robbery, or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property. * * *' "

Another part of the same act provided that:

"Every person who shall falsely represent or personate another, and in such assumed character, shall receive any money or other property whatever intended to be delivered to the party so personated, with intent to convert the same to his own use, shall be deemed guilty of larceny * * *."

The court held that the statute controlled and that the plaintiff could replevy the horses.

Other cases supporting plaintiff's contention are: *Hadley Warehouse Co. v. Broughton,* 126 Wash. 356, 218 P. 257; *Rodliff v. Dallinger,* 141 Mass. 1, 4 N. E. 805; *Gustafson v. Equitable Loan Ass'n.,* 186 Minn. 236, 243 N. W. 106; *Johnson v. Iankovetz,* 57 Or. 24, 102 P. 799, 110 P. 398; *Nugent v. Union Auto Ins. Co.,* 140 Or. 61, 13 P. (2d) 343; *Keegan et al. v. Lenzie,* 171 Or. 194, 135 P. 2d 717; *Mogul Transportation Co. v. Larison,* 181 Or. 252, 181 P. 2d 139. Williston, in his work on sales, writes:

"Sometimes after a bargain for a cash sale the buyer gives in payment of the price a worthless check, and it has been held that such a false check is no payment; and that not only does no title pass to the fraudulent buyer, but that the seller may assert his title against an innocent purchaser from the buyer." 2 Williston on Sales, Revised Ed., § 346a, p. 343.

Among the cases so holding, the author cites: *Johnson v. Iankovetz; Quality Shingle Company v. Old Oregon Lumber & Shingle Company; and Frye & Co. v. Boltman,* all supra. Williston argues at length that these decisions are unsound. He concedes, however, that the parties could agree that title should not pass unless the check is paid, although he believes that in the ordinary case, a seller for cash, receiving an n. s. f. check, assents to transfer of ownership in the goods. We quote:

" * * * If a seller should say 'you must not deal with these goods, though I have put them in your hands, until I collect the check,' that would show an intent not to transfer the property to the buyer. * * *" 2 Williston on Sales, Revised Ed., § 346a, p. 344.

■ In view of the findings and the undisputed evidence that there was to be "no deal" until the check was cashed, we think the learned author would agree with our conclusion that no title passed from the plaintiff to Davis in the case at bar.

■ The more serious question for decision is whether the defendant can successfully claim title by estoppel as against the claim of ownership by the plaintiff. Since the car was in Oregon at the time of the transaction between Davis and the defendant, the law of this state should determine the issue. Restatement, Conflict of Laws, Sections 255 to 257. This principle is conceded by the plaintiff.

■ The plaintiff relies upon the familiar general rule stated in American Jurisprudence:

"The general rule that a purchaser can acquire no better title than that possessed by his vendor finds application in replevin actions. So, the rightful owner of property purchased from a trespasser

may recover the same in an action of replevin against the purchaser, irrespective of good faith. * * *" 46 Am. Jur., Replevin, § 50, p. 31.

A similar statement appears in 46 American Jurisprudence, Sales, Section 459, page 622, where it is said that one who has acquired possession of property by a crime such as theft cannot confer title by a sale, even to a bona fide purchaser. It is stated in the same text to be a general rule that the fact that the owner has entrusted some one with mere possession and control of personal property is not sufficient to estop the owner from asserting title against one who has purchased from the possessor on the faith of his apparent ownership or apparent authority to sell. 46 Am. Jur., Sales, § 460, p. 623. However, plaintiff's citations do not go far enough, for we read:

" * * * The owner of personal property may, by placing it in the power of another to defraud innocent purchasers by an apparently valid transfer of the property, bar himself from claiming it, and it has been said that he thereby divests the title from himself. * * *" 46 Am. Jur., Sales, § 463, p. 626.

Concerning the particular situation in which a bad check is knowingly given in payment for chattels on a cash sale, we read the following:

"Although as between the parties to a sale of personal property, a check or draft given by the buyer and accepted by the seller constitutes only a conditional payment and title does not pass until the paper is paid, if there has been an actual delivery of the goods to the buyer by the seller, according to the weight of authority, a bona fide purchaser from the buyer without notice of the equities of the seller obtains a title which protects such purchaser against the demand of the seller to

be repossessed of the goods or to have a trust declared in his favor in the proceeds thereof. Such result has been justified on the theory of an estoppel against the seller arising out of his act in delivering the property to the buyer, and also upon the principle that where one of two innocent persons must suffer for the fraud of a third person, the loss should fall on him who, by his imprudence, enabled such third person to commit the fraud. Other authority takes the position that since title does not pass where the check or draft is accepted as a conditional payment only, the goods may be reclaimed from a subsequent purchaser upon the dishonor of the check or draft when presented for payment, if the seller has not been guilty of such conduct or laches as will create an estoppel against him. This result has been reached in reliance upon the provision of the Uniform Sales Act that where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell. * * *" 46 Am. Jur., Sales, § 478, p. 644.

The relevant provision of the Sales Act appears as O. C. L. A., § 71-123.

██ The plaintiff relies upon statutory provisions such as those found in Remington's Revised Statutes of Washington, Annotated, Sections 2129, 2601 and 2601-2. Those enactments provide that no sale of goods obtained by larceny, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The statutes define as larceny various fraudulent acts, including the issuance of an n. s. f. check with intent to defraud. We are told that the trial court took judicial notice of these Washington

statutes, and we may infer that by reason thereof, judgment was rendered for the plaintiff. But the real question is whether such statutes have any bearing on the transfer of title in Oregon. The statement that a bona fide purchaser of goods, acquired through larceny from the true owner, can acquire no title, is only a half truth. Ordinary larceny has been defined in this state as the taking and removing by trespass of the personal property of another with felonious intent. *State v. Broom et al.,* 135 Or. 641, 297 P. 340. If goods are taken from the true owner by trespass, that is, without the consent of the owner to the taking of possession, then, obviously the owner has done nothing to clothe the thief with any apparent title, and there can be no ground for an estoppel. If a thief, by trespass, steals a car, and also steals the certificate of title, the owner has done nothing on which an estoppel could be predicated, and he may recover his property, even from a bona fide purchaser for value. *Hadley Warehouse Co. v. Broughton,* 126 Wash. 356, 218 P. 257. But if the wrongdoer, by acts which are defined either as larceny by trick, or as statutory larceny, secures possession with the consent of the true owner, then the owner has taken at least one step toward clothing the wrongdoer with apparent title. There is a legal presumption that a thing delivered by one to another belongs to the latter, and that things in possession of a person are owned by him. O. C. L. A., § 2-407, (8), (11).

A recent Oregon decision, not cited by either party, is in point. In *Commercial Finance Corp. v. Burke,* 173 Or. 341, 145 P. 2d 473, the plaintiff brought suit to foreclose a chattel mortgage on a Chevrolet automobile owned by the defendants who were dealers in new and

used cars. Burke, a salesman for defendants, had authority to demonstrate cars, take delivery of used cars and receive the certificates of title to the used cars purchased by the defendants. He was, however, required to "turn into the office" of the defendants, such certificates of title. A customer of the defendants purchased from them a new automobile and turned in her used Chevrolet in part payment. The Chevrolet, together with the certificate of title, endorsed in blank, were delivered by her to Burke. Burke falsely informed defendants that he had a prospective purchaser for the Chevrolet. He inserted his name on the certificate as transferee and took the car and the certificate of title to Pendleton where he applied to the plaintiff for a loan to be secured by a chattel mortgage on the car. He exhibited to the plaintiff the car and the certificate, in the condition just described, and on the faith thereof, secured a loan. As security, he executed a chattel mortgage and delivered the certificate of title to the plaintiff. The chattel mortgage was recorded and the certificate of title was sent to the secretary of state who issued to the plaintiff a new certificate in which Burke was designated as owner and the plaintiff as mortgagee. Some time later, the defendants undertook to sell the Chevrolet car. They were unable to find the certificate of title, and ultimately discovered the facts. This court stated the question to be: "Whose right is superior, that of the defendants because of their ownership of the automobile, or that of the plaintiff because of its mortgage?" The plaintiff, who was in the relative position of the defendant in the case at bar, relied upon the "well-established equitable principle that when one of two innocent persons must suffer because of the acts of a third, he who

by his conduct, act or omission has enabled the third person to occasion the loss must sustain it". The court said:

"The defendants do not question the correctness of the foregoing rule, but assert that the rule has no application in cases in which the wrong was accomplished through a criminal act: 31 C. J. S., Estoppel, § 103 at page 330. They argue that in retaining the certificate of title, inserting his name therein as assignee, procuring the loan and mortgaging the automobile, Burke committed a crime."

It was pointed out that the certificate of title is prima facie evidence of ownership. O. C. L. A., § 115-114. The court said:

"At the time of making the loan to Burke the plaintiff did not know that he was an employee of the defendants. It relied upon his representation that he was the owner of the Chevrolet and upon the fact that he had the car in his possession and with it the certificate of title, on which appeared his signature as purchaser. The plaintiff is not chargeable with knowledge of the conditions under which Burke came into possession of the car or the certificate of title. Nor is it claimed that the plaintiff was negligent in making the loan to Burke. Nothing is shown to impugn the plaintiff's good faith throughout the transaction.

"The efficient and proximate cause of the loss was not any criminal act committed by Burke, but the confidence that the defendants placed in Burke, by reason of which he was permitted to have in his possession the certificate of title and the motor vehicle."

The court cited with approval *Russell v. American Bell Telephone Company,* 180 Mass. 467, 62 N. E. 751 and *National Safe Deposit Company v. Hibbs,* 229 U. S. 391, 57 L. ed. 1241. The plaintiff, in the case at

bar, relies upon *Schumann v. Bank of California,* 114 Or. 336, 233 P. 860. The defendants in *Commercial Finance Corp. v. Burke,* supra, likewise relied upon the Schumann case, but this court held that it was distinguishable. We agree, and in any event are disposed to follow the authority and reasoning of *Commercial Finance Corp. v. Burke,* which appears to be directly in point.

We will now summarize our conclusions: (1) The fact that an owner has merely entrusted someone with possession and control of a chattel is not sufficient to estop him from asserting title against one who has purchased from the possesor in reliance on the apparent ownership of the possessor. This is true, notwithstanding the statutory presumptions to which we have referred. *Johnson v. Iankovetz* and *Keegan et al. v. Lenzie,* both supra; *Eatonville State Bank v. Marshall,* 170 Wash. 503, 17 P. 2d 14; *Hadley Warehouse Co. v. Broughton,* supra; (2) We need not in this case determine the legal effect of a transaction in which the owner, pursuant to an agreement for a cash sale, delivers possession of a chattel in exchange for a worthless check but does not in any other way clothe the wrongdoer with indicia of title, and the wrongdoer then sells to a bona fide purchaser. We limit our decision to the facts of the instant case in which the owner expressly retained title until cash payment should be made but in which he did deliver to the fraudulent purchaser both the car and the certificate of title. We hold that when an owner voluntarily clothes the fraudulent or criminal purchaser with indicia of title and delivers to him the possession of the chattel, he will be estopped to assert his title as against one who for value and in good faith and without no-

tice, purchases the chattel in reliance upon the apparent ownership of the one so entrusted with possession and indicia of title. *Commercial Finance Corp. v. Burke et al.,* supra; *Ruddy v. Oregon Automobile Credit Corp.* 179 Or. 688, 174 P. 2d 603; *Kelley v. Ness,* 182 Or. 661, 189 P. 2d 570 (under the provisions of the Sales Act); *Mogul Transportation Co. v. Larison,* supra (dictum); *Pacific Wool Growers v. Draper & Co.,* 158 Or. 1, 73 P. 2d 1391; *First National Bank of Portland v. Stretcher et al,* 169 Or. 532, 129 P. 2d 830; *Gray v. Fankhauser,* 58 Or. 423, 115 P. 146; *Beckwith v. Galice Mines Company,* 50 Or. 542, 93 P. 453; *Vanderpool v. Burkitt,* 113 Or. 656, 234 P. 289; *Russell v. American Bell Telephone Company,* supra; *National Safe Deposit Company v. Hibbs,* supra.

In the following cases cited by the plaintiff the original owner prevailed against the purchaser or lienee, claiming under the wrongdoer, but the possibility of estoppel against the assertion of title was recognized: *Frye & Co. v. Boltman,* supra; *Gustafson v. Equitable Loan Ass'n.,* 186 Minn. 236, 243 N. W. 106; *Schumann v. Bank of California,* supra; *State Bank of Black Diamond v. Johnson et al.,* 104 Wash. 550, 177 P. 340.

■ Applying the foregoing principles to the facts of this case, we think the plaintiff did clothe Davis with such indicia of title as justified reliance by the defendant upon the apparent ownership of Davis. The certificate of title upon its face stated that: "it appears from the records in this office that the names shown below are the registered and legal owners of the motor vehicle described * * *''. Then follows the signature of the Director of Licenses of the state of Washington. The name appearing as owner on the face of

the certificate is C. C. Sullivan. On the back of the certificate the following appears:

"Endorsement for Transfer of Ownership. Read Carefully

"The registered owner, as shown on the face of this certificate, releases his interest by signing on line 1 below.

"The legal owner releases his interest by signing on line 2. If same person is both legal and registered owner, signature must appear on both lines 1 and 2.

"New owner must sign on line 3 and with the exception of registered dealers, must file application for transfer of ownership and attach this certificate to the application. New legal owner must sign on line 5."

On line 1 there appears the signature of C. C. Sullivan, dated 5/12/48, and under the signature the words "Signature of Registered Owner—Releasing interest in vehicle". On line 2 appears the signature of C. C. Sullivan followed by the same date, under which appear the words "Signature of Legal Owner—Agreeing with name on other side—Releasing his equity in vehicle". On line 3 appears the signature of Wm. H. Davis followed by the date 5/22/48. Apparently Davis, who agreed to purchase from the plaintiff only on the 23rd day of May, antedated his signature by one day. The certificate of title gives no indication that the plaintiff ever had any interest in the automobile, the reason being that upon purchase of the car from Sullivan, the plaintiff never caused his name to be inserted as transferee and never surrendered the certificate for the purpose of securing a new certificate in his own name. As exhibited to the defendant, the certificate would indicate to any layman that on or before

22 May 1948, Davis became purchaser from Sullivan. The car was sold to the defendant in Pendleton on 25 May 1948 and on that date the defendant paid Davis $600. We hold that the certificate in the form in which the defendant received it constituted indicia of title in Davis and that the defendant was entitled to rely upon it when coupled with the fact that Davis was also in possession of the car.

■ This is a hard case, but an appropriate one for invoking the rule that when one of two innocent persons must suffer because of the acts of a third, he, who by his conduct, act or omission has enabled the third person to occasion the loss, must sustain it. The judgment is reversed.