### HARDMAN *et al. v.* BRETT.

*(Circuit Court, S. D. New York.* February 6, 1889.)

1. CARRIERS—OF GOODS—LIABILITY FOR LOSS—SET-OFF.

A common carrier who has brought suit against a wrong-doer to recover for the destruction of goods which had been intrusted to him for transportation, and has recovered for their amount, is liable to the owner of the goods for the sum recovered, and cannot recoup against the claim the expenses incurred in the litigation with the wrong-doer.

2. MARINE INSURANCE—SUBROGATION.

Plaintiffs insured a cargo of lumber on a schooner, of which defendant was the managing owner. By a collision with a steam-ship, in which a court of admiralty, at the libel of defendant, decided both vessels in fault, the cargo was lost. The court also held that both parties were liable for the full value of the cargo, and that the steam-ship was liable to the schooner for one-half the damage done to the latter. These sums were paid, under order of court, to defendant's proctor, who, after deducting his fees, paid the residue to defendant. *Held,* that plaintiffs, who had succeeded to the rights of the owner, could recover the full amount paid to the proctor, without deduction of proctor's fees and expenses of litigation.

At Law.

Action by Hardman and others to recover of one Brett a sum of money received by him as the value of a cargo of lumber lost at sea, which plaintiffs had underwritten. Trial by the court without a jury.

*J. Langdon Ward,* for plaintiffs.

*Wm. W. Goodrich,* for defendant.

WALLACE, J. The plaintiffs are underwriters, who had insured a cargo of lumber shipped in July, 1878, on the schooner S. B. Hume, which

cargo was lost by a collision between the schooner and a steam-ship, and sue to recover a sum of money representing the value of the cargo, which came to the hands of the defendant in the progress of a suit in admiralty brought by the owners of the schooner against the steam-ship to recover damages sustained by the collision, including the loss of the cargo. The plaintiffs have succeeded to the rights of the owners of the cargo by subrogation. The defendant was the managing owner of the schooner, and the active party in prosecuting the suit in admiralty in behalf of the owners. The libel in the admiralty suit averred in respect to the cargo that the owners of the schooner were entitled as carriers to recover the value. The court decided in the admiralty suit that both the schooner and the steam-ship were in fault for the collision, and decreed that both parties to the suit were liable to the owners of the cargo lost for the full value thereof; and also decreed against the steam-ship in favor of the owners of the schooner for one-half the damages sustained by the schooner in the collision. The sum found by the decree to be owing for loss of the cargo was $3,496.92; and the sum awarded for the half of the damages to the owners of the schooner was $4,426.22. After the decree was rendered, and pending an appeal from the district court to the circuit court, the owners of the steam-ship paid into court so much of the sum awarded against the steam-ship as would satisfy the claims of the owners of the cargo, to-wit, $3,496.92; and this was done in order that the owners of the steam-ship might discharge themselves from liability to the cargo-owners in a suit threatened or brought in another jurisdiction by the cargo-owners against the steam-ship. The decree of the district court having been affirmed by the circuit court upon the appeal, the owners of the steam-ship paid the balance of the decree to the proctor for the owners of the schooner; and shortly thereafter such proctor made an application to the court, and obtained an order, that the $3,496.92 which had been paid into the registry of the court by the owners of the steamship be transferred to him in behalf of the owners of the schooner. This order was applied for by the instructions of the present defendant, and the defendant received the money from the registry of the court, less the sum of $1,000, which was retained by the proctor for his services in the cause.

The theory of the present action is that the money paid into court, and withdrawn by the intervention of the defendant, is the proceeds of the cargo, for which the defendant is liable to the plaintiffs, who are the real owners, as for money had and received. The defendant insists that he is entitled to retain out of these moneys such proportion of the expenses of the litigation between the owners of the schooner and the steam-ship, including counsel fees, as the amount recovered for the cargo bears to the whole amount of the recovery against the steam-ship; and he asserts that upon an adjustment of the expenses incurred in the litigation upon that basis only the sum of $873.34 remains due to plaintiffs.

The delivery of goods to a carrier for transportation vests in him a special property, which authorizes him to maintain an action against any person who disturbs his possession, or does any injury to the goods. Every

bailee has a temporary qualified property in the thing of which possession is delivered to him by the bailor, which entitles him to maintain an action against any stranger who injures it; and the reason is because he is answerable over to the bailor, and ought not to be responsible for the loss without being able to resort to the person who was the original cause of the injury. Story, Bailm. § 93. A carrier by vessel for hire, whether strictly a common carrier or not, assumes the ordinary obligations of a common carrier, and 'is bound to carry the goods shipped to their destination, unless prevented by the act of God or the public enemy, or the act of the shipper, or one of the excepted perils expressed in the contract of shipment. *The Maggie Hammond*, 9 Wall. 435; *The Commander in Chief*, 1 Wall. 43, 51; *The Niagara* v. *Cordes*, 21 How. 7. It is just, therefore, that he should be permitted to indemnify himself from a wrong-doer against his liability to the shipper or owner. In prosecuting the suit against the steam-ship the defendant did not assume to act as an agent for the owners of the cargo; but he claimed to recover the value of the goods lost by virtue of his special property in them as a carrier. It is familiar law that the special right of property conferred by a bailment is sufficient to enable the bailee to recover the full value of the property of a wrong-doer who destroys it; and this, whether the bailment is for a consideration, or is merely a naked bailment. Thus a traveler was allowed to recover in trover against a steam-boat company the full value of a satchel intrusted to his care by a friend, (*Moran* v. *Steam-Packet Co.*, 35 Me. 55;) and the finder of a jewel was permitted to recover its whole value for a conversion by a stranger, in the leading case of *Armory* v. *Delamirie*, 1 Strange, 304. Inasmuch as the law does not allow a defendant to be vexed twice for the same wrong, a recovery by the person having a special property, and satisfaction by the wrong-doer, discharges the latter from all liability to the owner. *White* v. *Webb*, 15 Conn. 305; *Smith* v. *James*, 7 Cow. 328; *Harker* v. *Dement*, 9 Gill, 7.

When the defendant received the money in question from the owners of the steam-ship he thereby absolved them from any further liability to the plaintiffs. The plaintiffs took no part in the suit, were not consulted, and had no opportunity to intervene in any way. As is said in the opinion of the court in *The Commander in Chief*, *supra*, doubtless they might have intervened and petitioned the court for the transfer of the money to them at any time before the distribution of the fund in the registry of the court. But they were under no obligation to do this, and were at liberty then, as they had been at any time after their right accrued, to bring an action against the owners of the schooner, and recover the value of the cargo, which had not been delivered pursuant to the duty of the carrier. In such an action it could not be maintained by the carrier with any color of plausibility that he should be permitted to retain, or recoup against the demand of the cargo-owner, any sum which he might have expended in prosecuting a suit brought for his own protection and indemnity against a wrong-doer by whose act the cargo was lost. Such a defense would be preposterous in a case where the loss of the cargo was caused by the misconduct of the carrier; and such was the fact in the

present case. Instead of bringing such a suit for the value of the cargo, the plaintiffs have elected to sue the defendant, who has received a fund which, in legal contemplation, is the cargo itself. If the defendant had sold the cargo and received the proceeds, the plaintiffs could maintain an action against him for the amount, upon the promise implied by law to pay them to the true owners. What the defendant has done is equivalent to that, because he had no right to appropriate the fund to any other object than that of paying it to the true owners in order to exonerate himself. Although he has not been guilty of a technical conversion, he has sought to retain money to which, as against the plaintiffs, he has no equitable claim. The action for money had and received, which is sometimes termed an equitable action, affords an appropriate remedy to the plaintiffs. If defendant has allowed his proctor to retain part of the money, he must account for it as though he had received it himself, and paid over to the proctor the amount, which the latter retained. Judgment is ordered for the plaintiffs for the sum of $3,496.92, with interest from October 13, 1885.