[No. 25215.    Department One.    November 22, 1934.]

ROBERT E. SPARE *et al., Respondents,* v. BELROY
HOUSING CORPORATION, *Appellant.*[1]

*Allen, Froude & Hilen,* for appellant.

*Clarke & Clarke,* for respondents.

TOLMAN, J.—Respondents, as plaintiffs, brought this action to recover the value of their automobile, which disappeared from the garage of the defendant. A trial to the court, sitting without a jury, resulted in findings of fact and a judgment in favor of the plaintiffs, from which the defendant has appealed.

The facts are but little in dispute, the controversy now being chiefly as to the law applicable. The material facts are substantially these: Respondents became tenants in an apartment house operated by the appellant some months prior to the loss of their car, under an arrangement by which they paid rent for an apartment and paid an additional charge of five dol-

[1] Reported in 38 P. (2d) 207.

lars per month for the storage of their car in the garage situated in the basement of the apartment building. It appears there were fifty-two apartments in the building and only sixteen stalls in the garage, but by using the aisle running lengthwise between the stalls, as many as twenty-five automobiles could be housed. At the time they became tenants, it was fully explained that, because of this condition, the respondents could not be allotted a stall, and that their car must be left so that it could be moved about by the garage attendant as he might consider necessary in order to make room for all of the cars to be accommodated.

An attendant was represented to be on duty from eight p. m. to eight a. m. each day, who would care for the cars of all the tenants, bring them in from the street at night, if requested, and likewise park them on the street in the morning, if requested; but in any event, in order that the cars might all be housed, the attendant must be permitted to so handle all cars that the stalls might be filled and thereafter the aisle filled with three cars abreast and three cars deep. Not only must the cars be so placed, but also rehandling was necessary so that as cars were called for they might be gotten out by the attendant. This congested condition required that the large cars be given the stalls, and that the smaller ones be placed in the aisle to be moved out into the street when necessary to permit the entry or exit of cars placed in the stalls.

Respondents' car was of the type requiring it to be stored in the aisle, and they were denied the use of a stall. Seemingly, it was understood that the attendant might be required to move respondents' car out or in at any hour to facilitate the entrance or exit of other cars. Some, perhaps most, of the tenants furnished extra keys for the use of the garage

attendant, but it nowhere appears that respondents knew of such a custom or were required or requested so to do, and they did not furnish an extra key. Respondents usually left the key in the lock or under the matting on the floor of the car, and no objection seems to have been voiced to this practice. The attendant was not required to remain on duty all night, but when all of the cars were in and when the lateness of the hour indicated that there would be no further call for a car to go out, the attendant was expected to lock the garage and go to bed. All tenants who used the garage had keys which would permit them to enter the garage and take out a car at any time.

During the late afternoon and early evening hours before the garage attendant came on duty, the manager of the house looked after the cars as they were brought into the garage, and moved them about as might be necessary. These facilities for housing cars with an attendant in charge were featured in dealing with prospective tenants, and were considered as having considerable weight in securing tenants.

Under these circumstances and conditions, and after six months use of these facilities in the manner indicated, the respondent husband on December 5, 1931, shortly after five p. m., drove his car into the garage and left it unlocked in a stall, according to his usual custom. He called for the car the next morning, but it could not be found. No locks were found broken, and there was no evidence of a forcible entry of the garage. Whether the car was removed by someone having a key to the garage, was taken from the garage while it was still unlocked, or was moved into the street by the attendant in making room for other cars and there left with the keys in it (as seems to have been the common practice) until removed by some unknown wrong-doer, in no wise appears.

The appellant seems to contend that these facts are insufficient to establish a delivery of the car to it, or an acceptance of the car by it as a bailee for hire, but that, on the contrary, it should be held to be a mere lessor of space, and not liable under the facts shown. It is true that, to constitute a bailment, there must be a delivery and acceptance. 6 C. J. 1084; 3 R. C. L. 72.

The contract of bailment may be expressed or implied, and the delivery may be actual or constructive. 6 C. J. 1102.

We think the facts here very clearly establish a delivery to and acceptance of the car by the appellant. The conditions which we have detailed show conclusively that, by actual agreement followed by six months of every-day usage, the respondents were required and expected to drive the car into the garage and leave it so it could be moved about in order to accommodate the appellant in its attempt to serve all of its tenants; and that, when so left, the car was accepted by the appellant as bailee. This was a delivery and an acceptance of the kind and nature contemplated by the contract, which gave the appellant full control of the car while it remained in the garage. The conditions giving appellant control of the car were made by the appellant for its own convenience and advantage, and it must accept the liability which follows.

We have examined with care the very interesting cases cited and relied upon by the appellant, among which are *Ex Parte Mobile Light & R. Co.*, 211 Ala. 525, 101 So. 177, 34 A. L. R. 921; *Hogan v. O'Brien*, 206 N. Y. Sup. 831, but each of these cases deals with the renting of space only, and is clearly distinguishable upon the facts.

We think the facts of this case bring it within the

rule laid down in *Blackburn v. Depoyster,* 209 Ky. 105, 272 S. W. 398; *Byalos v. Matheson,* 328 Ill. 269, 159 N. E. 242; *Goodyear Tire & Rubber Co. v. Altamont Springs Hotel Co.,* 206 Ky. 494, 267 S. W. 555; and *Keenan Hotel Co. v. Funk,* 93 Ind. App. 677, 177 N. E. 364.

Appellant seems also to raise the question of contributory negligence on the part of respondents, but what we have already said indicates that the facts fail to establish that defense.

The judgment is affirmed.

BEALS, C. J., MILLARD, MAIN, and GERAGHTY, JJ., concur.