[No. 33371. Department One. December 22, 1955.]

AMERICAN TUG BOAT COMPANY, *Appellant,* v. WASHINGTON
TOLL BRIDGE AUTHORITY, *Respondent.*[1]

[1]Reported in 291 P. (2d) 668.

*O. D. Anderson* and *J. P. Hunter*, for appellant.

*The Attorney General* (*Bogle, Bogle & Gates, Claude E. Wakefield,* and *Edward C. Biele,* of counsel), for respondent.

DONWORTH, J.—This case presents the single question whether the owner of a tug which is towing a raft of logs belonging to other parties, pursuant to a contract of towage, may maintain an action against the owner of a ferry boat for damages to the tow caused by the negligent operation of the ferry.

This question comes to this court as the result of the trial court's sustaining a demurrer to a complaint alleging, in substance, as follows:

On February 7, 1954, plaintiff's tug "Gwylan" had in its exclusive possession and control a tow of four rafts of logs consisting of boomsticks (owned by Weyerhaeuser Timber Company and Snohomish River Boom Company) and logs (owned by Georgia-Pacific Plywood Company), pursuant to a contract to transport the tow for its owners from Everett to Port Blakely. On the date mentioned, when the tug and tow was off Alki Point in Elliott bay, the ferry "Willapa," owned and operated by defendant, Washington toll bridge authority, negligently collided with the tow, thereby destroying thirteen boomsticks and scattering the logs.

On or about February 18, 1954, plaintiff, pursuant to RCW 47.60.230, filed a claim with defendant in the amount of $3,334.68, seeking reimbursement for (a) the value of boomsticks destroyed in the collision, and (b) the cost of salvage operations in collecting and rerafting the logs made necessary because of the collision. This claim was not paid.

It was further alleged that the collision was due solely to the negligence of defendant's servants in operating the ferry. Plaintiff prayed for recovery of the full amount of its claim.

A demurrer to the complaint was interposed by defendant on the grounds that (a) the court did not have jurisdiction of the subject matter, (b) plaintiff had no capacity to sue, (c) there was a defect in parties plaintiff, (d) the complaint

did not state a cause of action, and (e) plaintiff was not the real party in interest. This demurrer was sustained, and, upon plaintiff's election to stand on its complaint, judgment was entered dismissing plaintiff's action with prejudice. Plaintiff has appealed and assigns error to the sustaining of the demurrer and to the entry of judgment dismissing the action.

The legislature has provided that, upon compliance with certain conditions, a suit may be brought against the Washington toll bridge authority to recover for damages arising out of injuries inflicted upon persons and property in the operation of its ferry system. The statutes granting this conditional right of action are as follows:

"In case of property loss or damage, personal injuries or death resulting from the operation of any ferry or terminal by the authority, any person or the personal representative of any person shall, subject to and to the extent hereinafter provided, have a right of action against the authority for such damage, loss, injury or death." RCW 47.60.230.

"The right of action extended by RCW 47.60.200 to 47-.60.270 shall be applicable to loss or damage of property and/or personal injury or death, resulting from the operation of ferries or terminals by the authority to persons other than shippers or passengers, but any recovery of damages in such cases shall not exceed an amount equal to the limitations of the insurance carried by the authority to insure it against loss for such liability." RCW 47.60.240.

"As a condition to a recovery thereon, a verified claim against the authority growing out of such damages, loss, injuries or death must first be presented to the authority and filed with its secretary within thirty days after the time when such claim accrued. If the claimant shall be incapacitated from verifying and filing his claim within said thirty days, or if the claimant be a minor, then the claim may be verified and presented on behalf of said claimant by his relative, attorney or agent. Each such claim must accurately locate and describe the event or defect that caused the damage, loss, injury or death, reasonably describe the damage, loss or injury, and state the time when the same occurred, give the claimant's residence for six months last past and contain the items of damages claimed. No action shall be maintained against the authority upon such claim

until the same has been presented to, and filed with, the authority and sixty days have elapsed after such presentation and filing, nor more than three years after such claim accrued." RCW 47.60.250.

The principal question on this appeal is whether appellant qualifies as a "claimant" under the statutes above quoted. If appellant may maintain an action in its own name against a private party under the facts alleged in the complaint, then it may file a claim with, and (after the expiration of sixty days) may institute a suit against, respondent. In other words, the decision in this case depends on whether a tug owner, under the facts alleged in the complaint, has a cause of action against the owner of a vessel negligently damaging the tow.

The trial court held that the only legal interest appellant had in the tow was its lien for towage services, and that, since the complaint did not allege the assertion of such a lien by appellant, it could not be a claimant under the statute and had no capacity to maintain this action against respondent. The court, therefore, sustained the demurrer on the ground that appellant lacked the capacity to sue.

Respondent, arguing in support of this theory, cites *Stevens v. The White City*, 285 U. S. 195, 76 L. Ed. 699, 52 S. Ct. 347, as holding that, in a towage contract for the towing of a vessel with a crew on board, the tug is an independent contractor and not a bailee of the tow nor an agent of the owner of the tow nor a common carrier. In that case, it was said:

"The tug does not have exclusive control over the tow but only so far as is necessary to enable the tug and those in charge of her to fulfill the engagement. They do not have control such as belongs to common carriers and other bailees. *They have no authority over the master or hands of the towed vessel beyond such as is required to govern the movement of the flotilla. In all other respects and for all other purposes the vessel in tow, its cargo and crew, remain under the authority of its master*; and, in emergency the duty is upon him to determine what shall be done for the safety of his vessel and her cargo. In all such cases the right of decision belongs to the master of the tow and not to

the master of the tug. A contract *merely for towage* does not require or contemplate such a delivery as is ordinarily deemed essential to bailment." (Italics ours.)

In our opinion, the case is not in point here. If "the vessel in tow, its cargo and crew, remain under the authority of its master," patently a contract of bailment does not exist, for there is lacking the element of delivery or change of possession which is essential to a bailment. The cited case has no application where, as here, the tug had exclusive possession and control of a "dumb" tow.

 There can be no question under the authorities but that appellant, as owner and operator of the tug, was a bailee of the boomsticks and logs which it had in its possession for towage purposes. This court has approved the definition of bailment stated in 6 Am. Jur. 140, saying:

"However, we think there is another and better ground upon which the appellant must prevail. That is that there was no change of possession or delivery in this case. In defining bailment, 6 Am. Jur. 140 says: 'In its broadest sense it has been said to include any *delivery* of personal property in trust for a lawful purpose.' While we are not inclined to view the element of delivery in any technical sense, still we think there can be no delivery unless there is a change of possession of an article from one person to another." *Theobald v. Satterthwaite,* 30 Wn. (2d) 92, 190 P. (2d) 714, 1 A. L. R. (2d) 799.

In 6 Am. Jur. (Rev. ed.) 178, Bailments, § 4, defining bailments, it is said:

"It is the element of lawful possession, however created, and duty to account for the thing as the property of another, that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense."

See, also, *Ramsden v. Grimshaw,* 23 Wn. (2d) 864, 162 P. (2d) 901; *Spare v. Belroy Housing Corp.,* 179 Wash. 385, 38 P. (2d) 207; *Hadley Warehouse Co. v. Broughton,* 126 Wash. 356, 218 Pac. 257.

Cases from other jurisdictions in which a tug owner has been held a bailee of the tow are: *Doherty v. Pennsylvania*

R. Co., 269 Fed. 959; *The Nonpariel*, 149 Fed. 521; *The Jersey City*, 51 Fed. 527; *Knapp, Stout & Co. v. McCaffrey*, 178 Ill. 107, 52 N. E. 898 (affirmed 177 U. S. 638, 44 L. Ed. 921, 20 S. Ct. 824); *Brown v. Clegg*, 63 Pa. St. 51. See, also, *Bisso v. Inland Waterways Corp.*, 349 U. S. 85, 75 S. Ct. 629; *Indian Towing Co. v. United States*, 350 U. S. 61, 76 S. Ct. 122 (Nov. 21, 1955).

█ In our opinion, the allegations of the complaint that the tow, owned by third parties, was in the exclusive possession and control of appellant, pursuant to a towing operation for valuable consideration, were sufficient, as against demurrer, to plead a contract of bailment wherein appellant was the bailee of the tow.

█ Having determined that appellant was a bailee of the tow involved in this case, we now consider its right to maintain this action for damage to the tow caused by the alleged negligence of respondent. The modern rule is stated in 6 Am. Jur. (Rev. ed.) 400, Bailments, § 302, as follows:

"In all classes of bailments, whether for mutual benefit or for either the bailee's or the bailor's sole benefit, the law now seems to be well settled that a bailee in possession of personal property may recover compensation for any conversion of, or any injury to, the article bailed while in his possession, or he may maintain an appropriate action to recover possession of the property."

This rule has long been recognized both at common law and in admiralty. *Hadley Warehouse Co. v. Broughton, supra; Pendleton v. Benner Line*, 246 U. S. 353, 62 L. Ed. 770, 38 S. Ct. 330; *The Nonpariel, supra; The W. C. Block*, 71 F. (2d) 682 (certiorari denied 293 U. S. 579, 79 L. Ed. 676, 55 S. Ct. 91); *The Jersey City, supra; Hardman v. Brett*, 37 Fed. 803, 2 L. R. A. 173; *Hudson Transit Corp. v. Antonucci*, 137 N. J. L. 704, 61 A. (2d) 180, 4 A. L. R. (2d) 1374; *Central R. Co. v. Bayview Refining Co.*, 81 N. J. L. 456, 79 Atl. 292; *Adams v. Carey*, 60 Ore. 153, 118 Pac. 553; 9 Am. Jur. 960, Carriers, § 859; 48 Am. Jur. 257, Shipping, § 376; 1 Restatement, Torts, 555, § 218.

The discussion of the applicable law is amplified in the following quotations:

"Since a bailee does not have legal title to the property bailed, and is no longer answerable to his bailor for the loss of goods occurring without his fault, there is agreement among most modern authorities that his right to maintain an action against third persons for the loss of, or injury to, the bailed goods is now based on his actual possession or right of possession of the goods at the time of the trespass. This right of the bailee is also quite generally put on the ground that he has a special property in the article bailed. Since, however, there is considerable confusion among the courts with respect to the use of the term 'special property' as applied to the interest of a bailee in the subject of the bailment, especially in bailments other than for mutual benefit, it is probably preferable to consider a bailee's right of action in this respect as standing squarely on his possession, rather than on any supposed special property therein, for as against a wrongdoer who is a stranger to the bailment, a bailee's possession may be regarded as title which will support any appropriate action." 6 Am. Jur. (Rev. ed.) 401, § 303.

"Where a suit is brought by a bailee against a third person for the conversion or loss of, or injury to, the subject of the bailment, the former's right to damages is not limited to his special interest in the property, but the general current of modern authority supports the rule that the bailee is entitled to damages commensurate with the full value of the property taken or the degree of injury sustained; notwithstanding he may not be liable to his bailor for such loss or damage; in such case, however, he holds the surplus recovered, beyond his own interest, in trust for the general owner." 6 Am. Jur. (Rev. ed.) 430, § 330.

The quoted language is supported by the following decisions: *The W. C. Block, supra*; *The Jersey City, supra*; *Hardman v. Brett, supra*; *Hudson Transit Corp. v. Antonucci, supra*; *Central R. Co. v. Bayway Refining Co., supra*; 6 C. J. 1168, § 184; 8 C. J. S. 371, § 56; Annotations in 2 L. R. A. 173, 118 A. L. R. 1338, and 4 A. L. R. (2d) 1374.

*The Jersey City, supra,* is, under the facts alleged in the complaint in this action, directly in point and controlling. In that case, the circuit court of appeals for the second circuit said:

"The only question of law in the case which has been argued at the bar is whether the libelant became subro-

gated to the claim of the Delaware & Hudson Canal Company, the owner of the injured tow, against the ferryboat for the damages. The libel states facts showing that, while the libelant's tug was towing a canal boat belonging to the Delaware & Hudson Canal Company, the ferryboat negligently, and without fault of the tug, collided with and injured the tow; and it further alleges that the libelant 'paid for the damages to said boat, and thereby became subrogated to all the rights of the owner.' The facts established by the evidence are that after the collision the owner of the tow insisted that the libelant should pay the damages occasioned thereby; that the libelant refused, insisting that it was under no legal obligation to do so, because the loss was inflicted without fault on the part of the tug; that subsequently, influenced by the desire to preserve cordiality in their general business relations, the libelant paid the damages to the owner of the tow; that several years thereafter the libelant asked the owner of the tow for an assignment of the latter's cause of action against the ferryboat, which was refused, on the ground that the claim had been paid, and there was nothing to assign, but that the latter consented to execute, and thereupon did execute an instrument reciting that the libelant had paid the damages,

. . .

"The question whether the libelant became subrogated to the claim of the Delaware & Hudson Canal Company does not affect the right of the libelant to recover. It has been unnecessarily introduced into the controversy. The libelant was a bailee of the property injured. Either the bailee or the bailor may maintain an action against a tort-feasor who injures the property while in the custody of the bailee, and recover the full damages; but a recovery of damages by one, and payment by the wrongdoer, will be a full satisfaction, and may be pleaded in bar at any subsequent suit by the other. . . . [citing cases]. If, say the court, in *White v. Webb* [15 Conn. 305], 'the suit is brought by a bailee or special property man against the general owner, then the plaintiff can recover the value of his special property; but if the writ is against a stranger, then he recovers the value of the property and interest according to the general rule, and holds the balance beyond his own interest in trust for the general owner.' The libelant could have recovered the damages occasioned by the tort of the ferryboat, without paying the owner of the tow. A subsequent payment, whether *ex gratia* or under compulsion, could not prejudice the right of recovery."

In 1934, the same court said, in *The W. C. Block, supra*:

"For centuries it has been the settled rule, both at common law and in the admiralty, that either the bailor . . . or the bailee (the libelant) might sue the tort-feasor for destruction of the bailed goods."

■ It is our conclusion that appellant, in its complaint, has stated a cause of action which it may maintain in its own name and right and not in any representative capacity. Therefore, appellant qualifies as a claimant under the statutes above quoted relating to filing claims against respondent, and the trial court erred in sustaining the demurrer to the complaint. This conclusion makes it unnecessary that we separately mention the other grounds stated in respondent's demurrer and discussed by the parties in their briefs and on oral argument.

The judgment is reversed, and the cause is remanded to the superior court with directions to overrule the demurrer.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.

March 23, 1956. Petition for rehearing denied.