[No. 12537-8-III. Division Three. January 6, 1994.]

RTC TRANSPORT, INC., *Appellant,* v. WILLIAM H. WALTON, *Individually and as Personal Representative,* ET AL, *Respondents.*

*Joseph D. Hampton, James A. Perkins,* and *Bogle & Gates,* for appellant.

*Harold B. Field* and *Murray, Dunham & Murray; James D. Maloney* and *Weeks & Skala,* for respondents.

STAPLES, J.[*] — Yakima County Superior Court granted RTC Transport, Inc.'s motion to amend its negligence complaint for property damages to add a claim for cargo damages. The court then ruled the amendment would not relate back and summarily dismissed the new claim because the statute of limitation had run. RTC contends the court erred by dismissing the claim because (1) it was encompassed in the complaint and/or (2) the claim arose from the same vehicle accident, so it should have related back to the filing of the complaint. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On January 29, 1988, RTC, a common carrier, was transporting a cargo of cigarettes for R.J. Reynolds Tobacco Company (RJR) from North Carolina to Kent, Washington. On that date, the RTC truck, driven by Anthony Smith, was involved in an accident on Interstate 82 near Ellensburg, Washington. It was foggy and there was ice on the road. The RTC truck was struck from the rear by a car driven by Helen Walton.[1] Shortly thereafter, a logging truck driven by Anthony Heckart (Heckart or respondent) collided with both vehicles. The RTC trailer and its cargo of cigarettes were damaged.

RJR made a claim against RTC for cargo damage in the amount of $60,026.36, representing the wholesale price of the cigarettes less salvage value. RTC paid RJR's claim in June 1988.

RTC filed an action against both respondents on September 26, 1989. The complaint alleged the following:

> [Paragraph 4] On January 29, 1988, on Interstate 82, northbound, approximately six miles south of Ellensburg, Washington, *plaintiff's property* was damaged in an automobile/tractor-

---

*Judge Fred R. Staples is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1] Helen Walton died as a result of the accident. Respondent is William Walton individually and as personal representative of her estate, hereinafter referred to as Walton or respondent.

trailer collision which occurred as a result of the negligence of Helen Hagler Walton and Anthony Heckart.

[Paragraph 5] As a proximate result of defendants' negligence, plaintiff suffered property damages in an amount now thought to exceed $60,000.

(Italics ours.)

On December 22, 1989, Heckart submitted interrogatories to RTC, two of which posed the following questions:

10. Please state whether a claim is being made for the cargo of the trailer that was involved in the accident herein.

11. If the answer to Interrogatory No. 10 above is in the affirmative, please state the amount claimed, and how that amount is computed.

On May 18, 1990, RTC answered interrogatory 10 stating, "[y]es", and interrogatory 11 stating, "[s]ee documents previously supplied." Extensive discovery was conducted by respondents on the issue of damages, including taking depositions of persons in North Carolina and Georgia relating solely to the cargo loss.

On February 27, 1992, RTC filed a motion for summary judgment on the issue of damages for the cargo loss, arguing the proper measure of damages was the wholesale value of the cigarettes. Respondents filed countermotions for summary judgment on March 17, 1992, contending the cargo damage was measured by the manufacturing cost. For the first time, respondents also raised the issue that the complaint failed to state a claim for cargo loss because it only referred to damage to "plaintiff's property". "Anticipating that the plaintiff will move to amend its complaint" for damages to the cigarettes, Heckart objected to any amendment as barred by the statute of limitation. As anticipated, RTC filed a motion to amend the complaint on April 1, 1992, to allege a claim for cargo damage, arguing it "related back" to the original complaint under CR 15(c).

The trial court ruled the amendment would be granted under CR 15(a), but it would not relate back under CR 15(c). On May 22, an order was entered granting Heckart's motion for summary judgment dismissing the cargo claim, holding

"as a matter of law" plaintiff's amended complaint would not relate back. On June 10, another order was entered granting Walton's motion for summary judgment. RTC timely appealed to this court.

### ASSIGNMENTS OF ERROR

RTC contends the court erred (1) in holding the plaintiff's original complaint did not state "a cause of action" for cargo damage and (2) in denying its motion to amend the complaint on the ground that the cargo claim did not relate back to the date of filing the original complaint.[2]

### ISSUES

Issue 1: Does the complaint state a claim for cargo damage? We conclude it does.

CR 8(a) provides:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross claim, or third party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

■ The current civil rules relating to pleadings were designed to accomplish the purpose of giving notice of a claim or defense.[3] The rules were designed to avoid the problem of

---

[2]The court orally held the complaint was inadequate to state a claim for cargo damage, but granted plaintiff's motion to amend. It then held the amendment did not relate back to the original filing. The written orders do not mention granting the motion to amend.

[3]"The only function left to be performed by the pleadings alone is that of notice. Thus, pleadings under the rules simply may be a general summary of the party's position that is sufficient to advise the other party of the event being sued upon . . .". 5 C. Wright & A. Miller, *Federal Practice* § 1202, at 69 (1990). *See also* footnote 4, at page 69, regarding the injustice of strict pleading requirements (quoting *Degraw v. Elmore*, 50 N.Y. 1, 7 (1872)):

> "This question of pleading has been a terror to suitors for many years before the Code. Legislatures have sought in vain to give relief * * *. Probably in not one case in ten thousand has injustice been done from the ignorance of a suitor as to the matters to be tried. But the cases of loss and damage to suitors by some defect of pleading have been innumerable."

a party losing a right because of a defective pleading.[4] If the adverse party needs a more definite statement for the purpose of responsive pleading, he may resort to CR 12(e). The burden of filling in the details is borne by the discovery process. 5 C. Wright & A. Miller, *Federal Practice* § 1215 (1990).

Respondents contend the complaint did not give "fair notice" of the claim for cargo loss. Heckart asserts the complaint needed "factual allegations about: (1) damage to RJR's cigarettes; (2) being the result of respondents' acts; (3) RJR having made a claim against RTC for damage to the cigarettes and; (4) RTC having involuntarily paid said claim to RJR." Walton makes substantially the same claim. In substance, respondents claim the complaint did not show RTC's capacity to sue because it did not aver that RJR assigned the cargo claim to RTC, and this is a condition precedent to recovery by RTC. They are mistaken.

CR 9(a) provides:

> **Capacity.** It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

There is no need for the plaintiff to allege its capacity to sue for the cargo damage nor any need to allege conditions precedent to such capacity in the complaint. *See Dyson v. King Cy.*, 61 Wn. App. 243, 809 P.2d 769, *review denied*, 117 Wn.2d

---

[4] "'Under the federal rules it is very difficult for counsel to draft a pleading so badly as to lose the rights of his clients. Indeed, it has been said that 'a sixteen year old boy could plead' under these rules." (Footnotes omitted.) 5 C. Wright & A. Miller, *Federal Practice* § 1202, at 75 (1990) (quoting Proceedings, Cleveland Institute on the Federal Rules, at 220 (1938)). This observation would apply equally to our pleading rules, which are substantially similar. *See* 3A L. Orland & K. Tegland, Wash. Prac., *Rules Practice* CR 8 comments — Robert Meisenholder, at 149 (4th ed. 1992).

1020 (1991). The rule requires the defendant to assert lack of capacity. *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304 (11th Cir. 1990).

■ Walton challenges not only the capacity of RTC to sue, but also the liability of RTC to RJR under common carrier law.[5] Liability of a common carrier for cargo damage is governed by the "Carmack Amendment" to the Interstate Commerce Act, enacted in 1906, which provides:

> [The] carrier [or connecting carrier] are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by [the carrier].

49 U.S.C. § 11707(a)(1). A carrier is liable to the shipper for all damage to the goods while in transit unless it can prove that it was not negligent and that the damage was caused by (a) an act of God, (b) public enemy, (c) an act of the shipper, (d) public authority, or (e) inherent vice or nature of the goods. *Missouri Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 12 L. Ed. 2d 194, 84 S. Ct. 1142 (1964). *See also* 14 Am. Jur. 2d *Carriers* §§ 507-661 (1964). RTC was obligated to pay RJR for the cargo damage.

More importantly, RTC has a claim in its own right to sue for damage to the cargo.[6] RTC's liability to the consignor or consignee for the loss is immaterial. Whether RTC has paid the consignor or consignee for the loss is also immaterial.

> As soon as goods are delivered to a carrier for transportation, the law vests in it a *special property which authorizes it to maintain an action against any person who does any injury to the goods.* In general, it may be said that a carrier may resort to any means for the protection of the property carried to which the owner could have recourse, and that it may recover for any loss of, or damage to, the property from the person

---

[5]Walton also claims that RTC "involuntarily" paid RJR. Heckart, however, acknowledged in his brief on motion for summary judgment "RTC was liable to RJR for the damage to the cigarettes" and "[p]laintiff, as a carrier[,] is primarily liable to RJR, the shipper, under the plain terms of 49 U.S.C. [§] 11707(a)(1)."

[6]We note counsel failed to provide the trial court or this court with any authority on the subject of a carrier's right to sue in its own name for cargo loss. The rule is sufficiently universal to admit of no dispute.

responsible, even though the real owner may also have an action against the same wrongdoer [citing *American Tug Boat Co. v. Washington Toll Bridge Auth.*, 48 Wn.2d 117, 291 P.2d 668 (1955) in footnote 2]. Of course, a recovery and satisfaction by the carrier bars an action by the owner of the property for the same loss or damage. Likewise, recovery by the owner will bar a like recovery by the carrier which has paid the owner the amount of his loss, except to the extent that the action is for damages to the carrier's special interest in the property.

(Footnotes omitted. Italics ours.) 13 Am. Jur. 2d *Carriers* § 233 (1964). This has been the law "for centuries". *American Tug Boat Co. v. Washington Toll Bridge Auth.*, 48 Wn.2d 117, 125, 291 P.2d 668 (1955) (citing *The W.C. Block*, 71 F.2d 682 (2d Cir.), *cert. denied sub nom. Cornell Steamboat Co. v. Scholl*, 293 U.S. 579 (1934)).

In *American Tug Boat*, a ferry boat collided with the plaintiff's tug towing logs, damaging the cargo. The tug company sued the owner of the ferry for negligence. There was no allegation the carrier paid the owner of the logs. The trial court dismissed the complaint. At issue on appeal was whether the tug company could maintain a negligence cause of action for damage to the logs, which did not belong to it. *American Tug Boat*, at 122. The court concluded the tug company was a bailee of the cargo and held it could sue in its own right for damage to the bailed goods. *American Tug Boat*, at 121-25. It was immaterial whether the tug company had paid the owner of the cargo for the loss, because its claim was not based on subrogation by payment. As a bailee the tug company had a special interest in the property, but its right to damages was not limited to the value of that special interest; rather, it was entitled to damages for the full value of the goods in its custody, although it held the surplus above its own interest in trust for the owner of the goods. *American Tug Boat*, at 123-25 (citing 6 Am. Jur. *Bailments* §§ 303, 330 (rev. ed.) (now 8 Am. Jur. 2d *Bailments* §§ 264, 354 (1980)); *The Jersey City*, 51 F. 527 (2d Cir. 1892); *The W.C. Block, supra*).

In *Pittsburg, C., C. & St. L. Ry. v. Chicago*, 242 Ill. 178, 183, 89 N.E. 1022 (1909), plaintiff railroad claimed certain property " 'possessed, as of its own property,' " was damaged, and that the defendant was liable. The court held the act in

question provided indemnity to "the owners of property", and the carrier, having a "special property" interest, was "in short, for all practical purposes, the owner of the property for the redress of all wrongs or injuries to it whilst in his possession.'" *Pittsburg*, 242 Ill. at 186, 187 (quoting 2 R. Hutchinson, *Carriers* § 779 (3d ed. 1906)). *See also George Bohannon Transp., Inc. v. Davis*, 323 F.2d 755 (10th Cir. 1963); *Railway Express Agency, Inc. v. Goodman's N.Y. & Conn. Express Corp.*, 129 Conn. 386, 28 A.2d 869 (1942); 8 C.J.S. *Bailments* § 96 (1988); Annot., *Bailor's Action Against Third Person for Damage to, or Destruction or Conversion of, Bailed Property as Affected by Defendant's Settlement With, Release by, or Judgment Liability to Bailee for Same Wrongful Act*, 118 A.L.R. 1338 (1939).

■■ RTC's possessory interest in the cargo is sufficient to support a claim for cargo loss under the allegations in the complaint that "plaintiff's property was damaged" (paragraph 4) and "plaintiff suffered property damages" (paragraph 5).[7] The worst that can be said is the allegation was ambiguous enough to generate an interrogatory which clearly indicated a cargo claim was being made. *Schoening v. Grays Harbor Comm'ty Hosp.*, 40 Wn. App. 331, 698 P.2d 593, *review denied*, 104 Wn.2d 1008 (1985). The trial court erred in holding the complaint failed to state a claim for cargo damage.

Issue 2: Does the complaint relate back under CR 15(c)? We conclude it does.

Although our conclusion that the complaint adequately stated a claim for cargo loss under CR 8(a) obviates any need to address whether the proffered amendment relates back to the original complaint for statute of limitation purposes, we believe some comment on this issue is in order.

■ In order for a newly asserted claim to relate back to the original complaint, the new claim must arise out of "the conduct, transaction, or occurrence set forth or attempted to

---

[7]RTC based its claim on 49 U.S.C. § 10927(a)(3) relating to a carrier's right to be subrogated to the rights of a shipper or consignee when the loss was caused by a connecting carrier. RTC may have the wrong theory to support its right to recovery, but its conclusion was correct.

be set forth in the original pleading . . .". CR 15(c). The rule is based on the premise

> that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

6A C. Wright, A. Miller & M. Kane, *Federal Practice* § 1496, at 64 (1990). Additionally, case law holds the adverse party must have "notice in fact, of some sort, regarding the possible claim or defense sought to be raised by the amended pleading." 3A L. Orland & K. Tegland, Wash. Prac., *Rules Practice* CR 15, at 371 (4th ed. 1992). Here, both requirements were met.

First, the cargo claim clearly arose out of the same occurrence set forth in the complaint; namely, the accident of January 29, 1988. Respondents contend the cargo claim did not arise from the same occurrence because RTC had no claim until it paid RJR for the cargo and received an assignment of such claim. As previously noted, this is incorrect.

Second, it is clear the respondents had adequate notice that RTC was making a claim for cargo loss. The respondents specifically asked RTC if it was making such a claim and received an affirmative answer. The respondents contend notice from sources outside the complaint, such as discovery proceedings, is ineffective.[8] This argument was addressed in 6A C. Wright, A. Miller & M. Kane § 1497, at 91-93:

> It has been suggested that the requisite notice must be given by the content of the original pleadings. Other cases have taken a broader view and have held that it is sufficient if the opposing party was made aware of the matters to be raised

---

[8]The cases upon which respondents rely to support their contention are distinguishable. In all three cases the court held the claims added by amendment did not arise out of the conduct, transaction or occurrence alleged in the complaint. *Construction Interior Sys., Inc. v. Donohoe Cos., Inc.*, 813 F. Supp. 29, 36-37 (D.D.C. 1992); *Federal Deposit Ins. Corp. v. Chizner*, 110 F.R.D. 114, 119 (E.D.N.Y. 1986); *Holdridge v. Heyer-Schulte Corp.*, 440 F. Supp. 1088, 1094 (N.D.N.Y. 1977). In contrast, the cargo claim here arose out of the same occurrence alleged in the original complaint.

by the amendment from sources other than the pleadings, a position that seems sound since it is unwise to place undue emphasis on the particular way in which notice is received.

(Footnotes omitted.) *See also* 3A L. Orland & K. Tegland, at 371. Numerous cases support the "broader view" that notice may come from sources other than the original complaint. *E.g.*, *Woods Exploration & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1300 (5th Cir. 1971) ("Appellees were neither surprised nor prejudiced, as their extensive fact-ferreting and myriad defense marshalling testifies"), *cert. denied*, 404 U.S. 1047 (1972); *Rohm & Haas Co. v. Dawson Chem. Co.*, 557 F. Supp. 739, 825 (S.D. Tex.), *rev'd on other grounds*, 722 F.2d 1556 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984); *Senger v. Soo Line R.R.*, 493 F. Supp. 143 (D. Minn. 1980); *Bates v. Western Elec.*, 420 F. Supp. 521 (E.D. Pa. 1976).

In *State v. Adams*, 107 Wn.2d 611, 732 P.2d 149 (1987), the court held that a brief on a motion for summary judgment gave adequate notice of the relief requested. While not entirely in point, it does reflect the "broader view". In *Schoening*, at 337, the court held the complaint could be aided by pretrial proceedings and, "if plaintiffs' theory was not made clear in their pleadings, it certainly was made clear before argument on defendants' motion for summary judgment." The same may be said in the instant case. Walton and Heckart conducted extensive discovery relating exclusively to this issue. Indeed, the catalyst causing the question to be brought here was RTC's motion for summary judgment on the issue of the measure of damages for the cargo loss. Only then did the defendants belatedly decide they did not have enough "notice" of the cargo claim. The trial court erred in holding the cargo claim did not relate back to the filing of the original complaint.

Reversed and remanded for proceedings consistent with this opinion.

THOMPSON, C.J., and MUNSON, J., concur.